Richard SINCOCK et al., Plaintiffs,

v.

Charles L. TERRY et al., Defendants.

Civ. A. No. 2470.

United States District Court
D. Delaware.

Oct. 16, 1962.

See also 210 F.Supp. 395.

Vincent A. Theisen, and Victor Battaglia, Wilmington, Del., for plaintiffs.

Januar D. Bove, Jr., Frank O'Donnell, Wilmington, Del., N. Maxson Terry, James H. Hughes, III, Dover, Del., and Robert Tunnell, Georgetown, Del., for defendants.

Before BIGGS, Circuit Judge, and WRIGHT and LAYTON, District Judges.

PER CURIAM.

The suit at bar is a class action brought by the plaintiffs on their own behalf and on behalf of all other persons similarly situated. The plaintiffs assert variously that they are residents of four representative districts and four senatorial districts of the State of Delaware and are duly qualified voters and taxpayers of the State and citizens of the United States. The defendants comprise the Boards of Canvass, the Clerks of Peace, the Departments of Election, and their Secretaries, of New Castle, Kent and Sussex Counties respectively, and the State Election Commissioner, all of whom perform statutory and constitutional duties relating to the conduct of the general elections in the State of Delaware.

The cause of action, both under the original complaint and an amendment thereto hereinafter referred to, arises under the Constitution and laws of the United States; the Fourteenth Amendment to the Constitution of the United States, 42 U.S.C. §§ 1983 and 1988. See also 28 U.S.C. §§ 1343 and 2201. Under the complaint as originally filed, as we held in our first opinion in this case, D.C., 207 F.Supp. 205 (1962), the issue presented is whether or not the apportioning of members of the General Assembly of Delaware by geographical units

pursuant to Section 2 of Article II of the Constitution of Delaware of 1897, Del.C.Ann. offends the constitutional rights of the electors of this State under the equal protection clause of the Fourteenth Amendment to the Constitution of the United States because of alleged debasement of their voting rights.

The plaintiffs ask us to declare Section 2 of Article II of the Constitution of Delaware to be unconstitutional and invalid for the reason just stated; to enjoin the defendants from conducting, canvassing, or otherwise engaging in any general election for the election of members of the House of Representatives or of the Senate of the General Assembly pursuant to the provisions of Section 2 of Article II of the Constitution of Delaware; to enter an order reapportioning the representative and senatorial districts of Delaware in accordance with the population of the State and the provisions of Section 3 of Article I of the Constitution of Delaware to provide for free and equal elections; or, to enter an order directing the conduct of the general election to be held on November 6, 1962 for Representatives and Senators in the General Assembly but on an at-large basis; and for other relief.

On July 25, 1962 we stayed the proceedings until August 7, 1962 in order to permit the 121st General Assembly to take such action as it deemed appropriate by way of amendment to Section 2 of Article II of the Constitution of Delaware. On July 30, 1962 the 121st General Assembly enacted a proposed amendment to the Constitution of Delaware, now embodied in H.B. 574, which, if agreed to by the 122nd General Assembly, would amend Section 2 of Article II of the Constitution to provide a new composition of the House and Senate of the General Assembly. Publication of the proposed amendment has been made in accordance with Section 1, Article XVI of the Constitution. The first step to effect an amendment to Section 2 of Article II has therefore been taken.

On August 7 the defendants moved for a further stay asserting in substance that the 122nd General Assembly, coming into office on January 8, 1963, should be given the opportunity to agree to the amendatory provisions to Section 2, Article II, proposed by the 121st General Assembly. We took this motion under consideration.

On August 8 the plaintiffs moved for a preliminary injunction to enjoin the defendants from conducting the General Election scheduled for November 6, 1962 insofar as it pertains to the election of members of the General Assembly.

On October 8, 1962 the plaintiffs amended the prayers of their complaint to ask that we provisionally reapportion the House of Representatives and the Senate and declare H.B. 574 to be unconstitutional for the same reasons as asserted for the invalidation of Section 2 of Article II of the Constitution.

Hearings and arguments have now been had on the motions to further stay the proceedings and for a preliminary injunction. The validity of Section 2 of Article II and of the provisions of H.B. 574 is presently before this court. Cf. Sims v. Frink, 205 F.Supp. 245 (D.C. Ala.1962). The defendants have filed answers but, in replying to many vital allegations of the complaint, they assert that they do not possess sufficient knowledge or information to form a belief as to the truth of the matters alleged. Some of the defendants admit the accuracy of the allegations as to population figures set out in paragraphs 21 to 25 inclusive of the complaint which, seemingly, find support in the exhibits attached to the complaint. Other defendants do not make such admissions. The defendants deny that irreparable damage will inure to the plaintiffs if this court fails to enjoin the election of November 6, 1962 in respect to the election of members of the General Assembly.

The plaintiffs by charts and other exhibits, explained at the hearing, show the population of the election districts of the State of Delaware, the geographical boundaries of the districts and the counties, and have put before the court vari-

ous other data which may be relevant. By the deposition of Dr. Paul Dolan and the evidence of others they seek to establish invidious discrimination in the method of selection of members of the General Assembly as presently required by Section 2 of Article II and under the method of selection proposed by H.B. 574. The plaintiffs assert that the discrimination demonstrated by both Section 2 of Article II and by H.B. 574 is such as to destroy any claim of rationality as to the apportionment of the General Assembly. Some defendants contend that the present election districts are justified by historical, economic, geographic and topographic factors. The position of other defendants in this respect is not clear. Certain defendants [1] claim that the provisions of H.B. 574 constitute a rational basis of representation in the General Assembly, both in House and Senate, and the charge of invidious discrimination or debasement of voting rights in respect to H.B. 574 cannot be maintained. Cf. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. The defendants, however, do not present any substantial evidence to support their respective positions, though as we have indicated they controvert what may be vital operative facts asserted by the plaintiffs. In short, we have a situation where the plaintiffs contend that the population figures demonstrate invidious discrimination and many defendants claim, at least insofar as H.B. 574 is concerned, that apparent discrepancies and disparities of electors' rights are not sufficient to overthrow the presumption of constitutionality.

■ We recognize of course that a statute must be presumed to be constitutional and that a state constitution may be deemed to be endowed with an even stronger presumption of constitutionality, and that he who would attack successfully the constitutionality of either statute or constitution must bear a very heavy burden. Dartmouth College v. Woodward, 4 Wheat. 518, 17 U.S. 518, 4 L.Ed. 629 (1819). If the verity of all of the operative facts presented by the plaintiffs on the instant record be assumed and the ultimate conclusions of mixed law and fact drawn by the plaintiffs therefrom were presumed to be accurate it might be concluded that the plaintiffs had made a showing of invidious discrimination as to the provisions of Section 2 of Article II and of H.B. 574 as well, and a court would be compelled to hold that the presumption of constitutionality would fall and that invidious discrimination would be established.

■ It is the law of this Circuit and of this District, however, that a party seeking a preliminary injunction must allege facts as to which there is no serious dispute as well as showing a reasonable probability of success on final hearing. See Vanadium Corp. of America v. Susquehanna Corp., 203 F.Supp. 686, 697 (D.C.Del.1962), and the cases cited in note 90 cited to the text. In the case at bar there is, in our opinion, a serious dispute as to operative facts but also, and this is of peculiar importance in the instant case, there is a very strong dispute as to the ultimate facts and the conclusions to be drawn therefrom. Counsel and the court are moving forward into uncharted legal territory.

■■ It is of course horn-book law that a preliminary, or interlocutory, injunction may not be granted unless the denial thereof would cause "irreparable injury". Doctor Dolan, the plaintiffs' own expert witness, stated his conclusion that an election held under the present constitutional system would not cause

1. The Chancellor of Delaware and the Judges of the Superior Court of the State of Delaware, all members of the Boards of Canvass, state in their answers that as judicial officers serving in ministerial capacities they deem it inappropriate to take a position on the merits of this law- suit but aver that as Chancellor of Delaware or as Judges of the Superior Court they will continue to discharge the duties imposed upon them by the Constitution of the State of Delaware unless restrained by a lawful order of this Court.

him irreparable injury.[2] We cannot regard Doctor Dolan's remark as facetious though we agree with him that most of us enjoy living in the State of Delaware today. The plaintiffs, however, contend that to deprive a man of equality of franchise is the same as depriving him of his vote altogether and that the record demonstrates that a vote of some of the electors in New Castle County has become thirty-five times as effective as the vote of certain other electors in that County. But while extent of dilution of franchise is a very relevant factor there are many others to be considered and the record as we have indicated seems to us at the present times to be inadequate. The issues with which we are concerned are of the gravest importance to the people of this State and constitutional questions should be decided only upon a full record. Villa v. Van Schaick, 299 U.S. 152, 155–156, 57 S.Ct. 128, 81 L.Ed. 91 (1936); Honeyman v. Hanan, 300 U.S. 14, 25–26, 57 S.Ct. 350, 81 L.Ed. 476 (1937); and Lathrop v. Donohue, 367 U.S. 820, 845–846, 81 S.Ct. 1826, 6 L.Ed. 2d 1191 (1960).

■■ Moreover the dilution and debasement of franchise in the State of Delaware seems to have developed—though of this again we cannot be sure on the present record—since the adoption of the Constitution of 1897. This apparently is the position taken by the plaintiffs.[3] The dilution and debasement of electors' rights has increased apparently year by year. It is worse this year probably than it was in 1960 and was certainly worse in 1960 than in 1950. These are facts of general knowledge of which we can take judicial notice. But generally speaking the disease of dilution has not progressed very much further today than it had at the time of the election of November 1960 and probably will not progress with great rapidity over the

next six months. The decision of the Supreme Court in Baker v. Carr, supra, was on March 26, 1962. The suit at bar was filed on June 5, 1962 and has been proceeded with with a celerity consonant with the importance and intricacy of the issues involved. We cannot find on this record that the plaintiffs and others situated like unto them will suffer irreparable damage if we do not enjoin the election of November 6, 1962 insofar as it relates to the election of members of the General Assembly. On the contrary, if we enjoin the election of November 6, 1962, we will have to substitute, in lieu of the provisions of Section 2 of Article II, an apportionment plan, election laws or rules and regulation devised by ourselves. Though the plaintiffs have suggested a plan for equalization of franchise the subject is one which requires careful study, further development by expert witnesses and the opportunity for extensive cross-examination by the parties and exploration by the court. A different and new apportionment system perhaps cannot be devised as quickly and as simply as the plaintiffs assert. If we were to enjoin the forthcoming election of November 6 for members of the General Assembly to be held under present constitutional provisions without substituting therefor an adequate redistricting plan and clear and sufficient instructions to the defendants in the instant case it would have a most disastrous effect and might deprive large numbers of electors of the State of Delaware of their franchise on November 6 to elect members of the General Assembly. This we will not do. On this ground alone, if there were no other, we would deny the application for a preliminary, or interlocutory, injunction.

The foregoing is deemed to constitute the findings by the court required by Rule 52(a), Fed.R.Civ.Proc., 28 U.S.C.

2. See Dolan deposition, p. 64.

3. Plaintiffs' requests for findings of fact contain the following statement: "16. The Constitution of the State of Dela-

ware of 1897 created 35 representative districts. The population in each of the 35 districts thereby created was substantially equal * * *".

We will deal now with the application for a further stay. It is obvious from what we have stated that in our opinion most serious questions of constitutionality are involved in respect to Section 2 of Article II and H.B. 574. We regret that the 121st General Assembly did not see fit to adopt the suggestion "as a temporary haven, and not as an ultimate harbor" [4] made by us, that the embodiment of apportionment provisions be stricken out of the Constitution of Delaware by an amendment to Section 2 of Article II that would prescribe that the composition of the Senate and the House of Representatives of the General Assembly and the terms of office of its members in the future should be as provided by Act of the General Assembly; i. e., provided by statute and not by constitutional provisions. Had the General Assembly pursued the course suggested and proposed such an amendment the 122nd General Assembly would have been able to adopt it. If an apportionment statute, not meeting the standards of the Fourteenth Amendment, had then been enacted by that General Assembly, no further amendment to the Constitution of Delaware would have become necessary. Another statute satisfying the guarantees of the Fourteenth Amendment could simply have been passed. As things stand now, if Section 2 of Article II and the provisions of H.B. 574 be held unconstitutional, no new plan for the composition of the Senate and House of Representatives can be effected under the provisions of Section 1 of Article XVI by a General Assembly until 1965. This in effect leaves this court in a position where it must proceed promptly to adjudicate the merits of the controversy after full hearing. Accordingly the application for further stay must be denied. A date will be fixed for pretrial hearing in the near future and a time will be set for trial on the merits as soon thereafter as is feasible after consultation with counsel.

An order will be entered concurrently with this opinion.

4. See 207 F.Supp. at pp. 206–207.