Richard SINCOCK et al., Plaintiffs,

v.

Mabel V. ROMAN et al., Defendants.

Civ. A. No. 2470.

United States District Court
D. Delaware.

Sept. 16, 1964.

As Amended Oct. 16, 1964.

**616**

Vincent A. Theisen and Victor F. Battaglia, Wilmington, Del., for plaintiffs.

David P. Buckson, Atty. Gen., Daniel L. Herrmann, Frank O'Donnell, Wilmington, Del., Max Terry, and James H. Hughes, III, Dover, Del., for defendants.

H. Edward Maull, Georgetown, Del., and Bruce M. Stargatt, Wilmington, Del., amici curiæ.

Before BIGGS, Circuit Judge, and WRIGHT and LAYTON, District Judges.

PER CURIAM.

The history of this litigation is set out in the decisions cited in the footnote.[1] Following the affirmation of our judgments by the Supreme Court in Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964), the General Assembly of Delaware enacted two statutes, respectively on July 6 and July 8, 1964, to reapportion Delaware in respect to the election of members of the General Assembly of Delaware. Not yet codified, the two statutes have been referred to throughout these proceedings and are referred to in this opinion as "S.B. 332" and "S.B. 336".[1a]

S.B. 332 provides for a House of Representatives to be composed of 35 members, to hold office for two years, a representative to be elected from each of 35 representative districts, and for a Senate to be composed of 18 members, to hold office for four years, to be elected by staggered terms, one Senator from each of the 18 senatorial districts. S.B. 332 provides also for the allocation of representative districts and senatorial districts throughout the State, and that the General Assembly by a later Act should determine the boundaries of the several representative and senatorial districts within the City of Wilmington and within the several Counties "in such manner as there shall be substantial equality of population among the several Representative Districts and among the several Senatorial Districts."

S.B. 336 establishes boundaries of representative and senatorial districts for the election of members of the General Assembly throughout Delaware. Obviously, S.B. 336 purports to be the Act referred to in the last sentence of the preceding paragraph of this opinion.

The certified judgment of the Supreme Court, affirming our judgments, was received by this court and duly docketed here on July 13, 1964. On the next day, the plaintiffs filed a document entitled "A Motion to Implement the Mandate of the Supreme Court of the United States." This motion alleges in substance that S.B. 332 and S.B. 336 do not reapportion Delaware insofar as members of the General Assembly are concerned substantially on a population basis, "one vote —one person", and in accordance with other standards set out in Roman v. Sin-

1. See Sincock v. Terry, 207 F.Supp. 205; 210 F.Supp. 395; 210 F.Supp. 396 (1962); Sincock v. Duffy, 215 F.Supp. 169 (1963), and Sincock v. Roman, 232 F.Supp. 844 (1964). More importantly, see the opinion of the Supreme Court in Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964), affirming the judgments entered following our opin-

ion in Sincock v. Duffy, supra, 215 F. Supp. 169.

1a. Senate Bill No. 332 appears as Chapter 360, Volume 54, Laws of Delaware; Senate Bill No. 336 appears as Chapter 361, Volume 54; and both bills together will appear as Chapter 6, Title 29, of the Delaware Code.

·cock, supra, and in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

The motion also asserts in substance that S.B. 332 in its allocation of representative districts and allocation of senatorial districts results in failing to guarantee a General Assembly apportioned substantially on a population basis, "constitutes an open invitation to partisan gerrymandering.", and that S.B. 336 has gerrymandered the City of Wilmington "with the deliberate intention of denying representation in the General Assembly to Republicans who were registered in Wilmington."

The plaintiffs by their motion ask this Court to enjoin the respondents, election officers and members of the Board of Canvass of the State of Delaware, from conducting, canvassing or proclaiming the results of, or otherwise engaging in any general election where the members of the General Assembly are to be elected under the provisions of the two bills and also seek to have the two statutes declared unconstitutional. They further seek to have this Court enter a decree to cause a reapportionment of the General Assembly of Delaware in accordance with the principles enunciated in opinions of the Supreme Court hereinbefore referred to, and, in particular, on a "one vote—one person" basis.

Following pretrial conferences, an order was filed on July 21, 1964, providing, among other things, that the defendants should file answers, motions, or other pleadings on or before July 27, 1964. The Committee of 39, Inc., a Delaware non-profit corporation, the membership of which comprises a number of public-minded citizens of Delaware, was granted leave to appear as amicus curiae. The order of July 21 also ordered that the "Motion to Implement" [2] should also be treated as a motion for a preliminary injunction as well as a motion for final relief. Answers and motions to dismiss and for summary judgment have been filed by the defendants. The plaintiffs also moved orally for an injunction to stay the state-wide primary which was held on August 15, 1964. Some of the issues presented by the motions are set out below.[3] All the motions referred to have been denied.

The court, treating the "Motion to Implement" as an amendment to the original complaint, as amended,[4] and the answers thereto as presenting justiciable issues, on August 3, 1964 proceeded to a hearing of the case. Numerous witnesses testified on behalf of the parties, including certain plaintiffs and members of the Committee of 39, Inc., called by the plaintiffs. The taking of testimony and the receiving in evidence of numerous exhibits consumed more than eleven trial days. On September 4, 1964, a motion by plaintiffs for a preliminary injunction to restrain the holding of a general election scheduled for November 3, 1964 was argued. The defendants also argued on

2. While the "Motion to Implement" does not specifically request a preliminary injunction, a fair reading of its first numbered paragraph ("1") requires it be so treated in view of the facts that a state-wide primary election was to be held and in fact was held on Saturday, August 15, and the general election is scheduled to be held on November 3, 1964. In any event, we are of the opinion that the court has the duty and the power to mould the pleading so that the ends of justice may be served. See Rule 1 and Rule 16, Fed.R.Civ.Proc., Title 28, U.S.C. Compare Paragraph 4 of the order of July 21, 1964.

3. The defendants raised various issues, which included the following: Whether the plaintiffs may proceed by way of the "Motion to Implement", or must file a new suit to be adjudicated by a newly constituted three-judge court; whether the allegations of the "Motion to Implement", and certain amendments thereto, relating to gerrymandering must be stricken as irrelevant; whether any substantial federal question or any justiciable issue has been raised; and whether treating the "Motion to Implement" as complaint the suit is without equity.

4. See and compare Schempp v. School District of Abington Township, Pennsylvania, 195 F.Supp. 518 (E.D.Pa.1961).

that day a motion to dismiss the action. Requests for findings of fact and conclusions of law have been filed by the parties and the motions of the parties, as just stated, are before us for our consideration and determination.

The court endeavored to divide the taking of evidence into two parts. The first part of the evidence taken was designed to go to the issue of "one vote—one person", the equality of the voting rights of inhabitants within the respective representative and senatorial districts of Delaware, and to the issues of contiguity and compactness of the election districts, as required by Roman v. Sincock, and Reynolds v. Sims, supra. See also Gray v. Sanders, 372 U.S. 368, 381, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963). Compare Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). This evidence was received over the objections of the defendants to treating the "Motion to Implement" as the equivalent of an amendment to the original complaint as amended. The objections were overruled and the evidence was received subject to motions to strike made by the defendants and subject to a statement by the court that it would rule on the admissibility of the evidence at a future date. The second part of the evidence taken was designed to go to the issue of gerrymander and was received under the assumption that that issue is relevant under the equal protection clause of the Fourteenth Amendment and under the Fifteenth Amendment. This evidence was received over the objections of the defendants and subject to motions to strike made by them with the understanding that the court would rule upon the relevancy of the issue and the admissibility of the evidence at a future date.

The reapportionment design for Delaware was made by four citizens of the State experienced in politics. Separate designs were prepared for New Castle County outside of Wilmington, for Wilmington, and for Kent County and for Sussex County, each of the four citizens making a plan of apportionment for one of the respective geographic areas as indicated above in accordance with the allocations of S.B. 332. The four plans, when put together, comprised the State of Delaware as a whole. The four plans were delivered to the Secretary of State of Delaware, who in turn transmitted them to the General Assembly. Thus, the reapportionment provisions contained in S.B. 336 came into being.

In the reapportionment design for Wilmington the planner used the figures of the 1960 Decennial Census to a large extent to ascertain the representative and senatorial districts but in order to conform to the allocations and boundaries specified by S.B. 332 and S.B. 336 it was necessary to split existing election districts. In Wilmington, however, though there were 38 "splits", this did not involve estimates since complete block figures were available. There were also various splits necessary in New Castle County, outside of Wilmington, but the architect of that apportionment design used various methods of estimating the populations involved in the splits, varying from "Map" estimates and physical inspections of split districts to ratios of populations to registered voters. In one or two small areas it was necessary to guess the populations under the plan employed.

The reapportionment planner for Kent County made use of the census tracts of the 1960 Decennial Census to some extent and also employed old representative districts to form new representative and senatorial districts. Splits were necessary and in connection with these, estimates were employed as in reapportioning New Castle, outside of Wilmington.

In respect to Sussex County, the planner did not use the 1960 Decennial Census figures, but made use of old election districts, splitting them where necessary to form new representative and senatorial districts. Estimates were employed in Sussex County on about the same basis as in Kent County and in New Castle County outside of Wilmington.

In respect to New Castle County vis-a-vis Wilmington if the formula of "one vote—one person" be strictly employed,

the City may be entitled to a percentage of one less representative and New Castle County outside of Wilmington may be entitled to a percentage of one more representative.[5] Under the allotments of S.B. 332, neither the City of Wilmington nor New Castle County outside of Wilmington can be entitled to a whole representative. In short, the disparity referred to is built in to the reapportionment by the provisions of the statute. See Section 603 and Section 604 of S.B. 332.

The new apportionments of both Kent and Sussex Counties have also come under attack by the plaintiffs. Dr. C. Harold Brown, sociologist for the Division of Urban Affairs of the University of Delaware, and also a demographer, stated that the use of voter registration figures as a ratio for determining population in a split district risks variances in the proportions of the total populations registered. This is a fact. It is also true, as Dr. Brown testified, that military personnel, such as the inhabitants of the Dover Air Force Base ordinarily register in lower proportions than citizens whose occupations are of a more settled nature. There is some evidence to prove that there is disparity between the 28th and 29th representative districts in Kent County.

Mr. L. Winfred Hughes, former president of the Department of Elections of Kent County, who made the Kent County reapportionment design, admitted a disparity in the populations of the two representative districts. The plaintiffs charge that that disparity is of the order of 2800 persons. The defendants concede that there is disparity but minimize its size.

We have cited the foregoing as examples. There are other errors in computations alleged in the designing of representative and senatorial districts in all three Counties, except as to the City of Wilmington. Some of the representative and senatorial districts in all three Counties and in the City of Wilmington are attacked on the ground of lack of contiguity and compactness. We cannot say, however, how important these errors are, if errors they be, until the entire Delaware reapportionment picture has been carefully considered and examined.

Dr. Malcolm E. Jewell, an associate professor and political scientist of the University of Kentucky, testified, however, that Delaware's new plan of reapportionment met the standards laid down by the Supreme Court and was one of the best in the United States. To prove his point, he stated that under Delaware's new apportionment 52.4% of the population will elect a majority of 10 out of the 18 members of the Senate. He stated that the ratio between the largest and smallest districts in both the Senate and the House is quite reasonable, as is the allocation of seats in both Houses between the three Counties.

Members of the Committee of 39, Inc., offered tables and figures developed by the use of computer techniques which, though disregarding to some extent historical boundaries such as incorporated city and county lines, developed a plan which, it is asserted, is eminently fair. This evidence was introduced by the plaintiffs to show that the plan of reapportionment effected by the Delaware legislature did not conform to the principles and standards laid down by the Supreme Court. The plaintiffs also offered a plan of their own, with supporting data, which, they assert, is somewhat superior to that designed by the Committee of 39, Inc. We shall not endeavor to analyze this evidence in this opinion. It is not our duty to determine whether a plan can be worked out that is superior in apportionment to that set up by S.B. 332 and S.B. 336. Our duty is to determine whether the plan set up by the General Assembly conforms to the requirements of the Constitution of the United States. The evidence referred to in this paragraph was received on the theory that it

5. Section 603(a) and Section 603(b) of S.B. 332, which provides for 8 representative districts in Wilmington and 16 representatives in New Castle County outside Wilmington.

would tend to show that the plan of re-apportionment enacted by the General Assembly was not in conformity with the principles of "one vote—one person", of contiguity and of compactness, and was relevant on the issue of gerrymander.

Evidence was offered by the defendants to show that the forthcoming registrations and election, and the machinery pertaining thereto, would be disrupted were this court now to order an election under the 1963 Constitutional Amendments. See Section 2, Article II of Constitution of Delaware, Del.C.Ann.Const. App. The plaintiffs deny this and assert that an election held under the new apportionment provisions would be disruptive of orderly election procedures because of deficiencies which they contend exist in the present election laws in the State when viewed in the light of the new apportionment.

As to the issue of gerrymandering, the plaintiffs have offered evidence in support of their charge while the defendants vehemently deny any intent to gerrymander on the part of the General Assembly and that the new apportionment will result in any unfairness, partisan or otherwise, to any political party in the election of members of the General Assembly. We shall not attempt now to analyze the evidence presented on this issue in this opinion. To do so prior to a decision on firm grounds that the issue of gerrymander falls within the purview of the present action and of the Fourteenth Amendment or of the Fifteenth Amendment might prove to be a bootless endeavor. The issue is one of almost original impression. Cf. Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). It will require further study and extended legal research before we can decide its relevancy and weigh the evidence under stated standards of law.

Other difficult issues are presented by the new apportionment enactments. One issue concerns the status of the ten hold-over Senators whose terms of office by the provisions of Section 2, Article II of the Constitution of Delaware of 1897, under which they were elected, may perhaps be deemed not to expire until their successors are legally elected and take office. See and compare Section 4, Article II, of the Constitution of Delaware, Del.C.Ann. Const.App.

The record in the case at bar is not a small one. It embraces the transcript of more than eleven days of evidence and a great number of exhibits, including many charts, maps, map-overlays, and tables of statistics. The evidence is of the sort which is difficult to analyze accurately and speedily. Page after page of the transcript contains oral testimony giving facts and figures as to how census enumeration districts, census tracts, old election districts, and even old representative districts and old senatorial districts, have been combined and in some instances split to create the new representative and senatorial districts. The full transcript of the present record including the oral argument was not received until Friday, September 11th. All requests for findings of fact and conclusions of law were not filed until Monday, September 14th.[6] The general election, of course, is scheduled for November 3, 1964, a day which very shortly will be at hand. The case is such that its adjudication requires study in depth, to be pursued with diligence and with sufficient time to consider duly all the elements involved. Moreover, the present record may have to be supplemented and further argument may have to be had.

The defendants have moved to dismiss the action. There is no doubt that the plaintiffs have stated a cause of action arising under the Fourteenth Amendment cognizable in this court, at least insofar as the issues of "one vote—one person", of contiguity and of compact-

6. Argument was had in advance of the filing of briefs and requests. What we have said in no wise is intended to reflect on the diligence of counsel, court reporters, or officers of the court. We have proceeded as rapidly as we could under the circumstances.

ness, are concerned. On the present record the motion must be treated as a motion to dismiss for want of equity. For the reasons stated in the foregoing paragraph, the motion to dismiss the action is not ruled upon at the present time. Decision thereon must be reserved until final determination of this case.

As to the motion for a preliminary or interlocutory injunction, it is well settled that such an injunction should not be granted unless this court is convinced with reasonable certainty that the plaintiffs will be successful on final disposition of the case. See Sincock v. Terry, 210 F.Supp. 396, 399 (D.C.Del.1962), and the authorities cited or referred to therein. There is uncertainty here as to the showing of success on final outcome. Moreover, the plaintiffs have not made a sufficient demonstration in the light of all the operative facts to support a finding that irreparable injury would result to them or to the electors of Delaware if the general election of members of the General Assembly under S.B. 332 and S.B. 336 as part of the general election to be held on November 3, 1964 is not enjoined. This court, or the Supreme Court, can declare the two Acts sub judice unconstitutional and, if it is necessary, a special election might be held, either pursuant to an Act to be passed by the General Assembly, or, if such a course becomes ultimately necessary, pursuant to court order.

On the other hand, the case at bar is of great importance because its result may affect the voting rights of all electors insofar as the elections of representatives and senators to the General Assembly of Delaware are concerned. Any disruptive force applied to the registration and election processes of Delaware which have been carried on and are being conducted with vigor by the County Departments of Elections will cause confusion and possible disenfranchisement of many electors.

If the election processes and the election are halted now by an injunction disruption will result. Reference is made again to the strong testimony given by the election officers of Delaware as to the difficulty which would now be encountered if the provisions of S.B. 332 and S.B. 336 were stricken down and the election of members of the General Assembly were proceeded with under an apportionment different from that set up by S.B. 332 and S.B. 336.

In Roman v. Sincock, supra, 377 U.S. 711–712, 84 S.Ct. 1459, Mr. Chief Justice Warren stated: "Acting under general equitable principles, the court below must now determine whether it would be advisable, so as to avoid a possible disruption of state election processes and permit additional time for the Delaware Legislature to adopt a constitutionally valid apportionment scheme, to allow the 1964 election of Delaware legislators to be conducted pursuant to the provisions of the 1963 constitutional amendment, or whether those factors are insufficient to justify any further delay in the effectuation of appellees' constitutional rights."

What was said by Mr. Chief Justice Warren is helpful here. While the Supreme Court, perhaps, did not anticipate that the General Assembly would act as quickly as it did in enacting a new apportionment plan for the election of its members, nonetheless it is apparent that the Court gave to us by the language quoted permission to avoid disruption in the election of members of the General Assembly on November 3, 1964, whether by reinstating the 1963 Constitutional Amendment reapportioning seats, or, implicitly by not quickly or intemperately invalidating other action taken to reapportion the State by the General Assembly of Delaware.

The issues presented here are too vital to be hastily disposed of. They must have full and mature consideration by this tribunal before they can be adjudicated properly. The period of time that would be required by this court adequately to adjudicate the issues presented plus that period which would be required by the election authorities to set up the necessary election machinery under another apportionment plan, if our decision

favored the plaintiffs, would exceed the period of time between now and the date of the forthcoming general election. Such a course would cause disruption. Moreover, the new apportionment plan seems superior to the plan effected by the 1963 Amendment to Section 2, Article II, of the Delaware Constitution, although we, of course, presently express no opinion as to whether the new plan meets the requirements of the Fourteenth Amendment. In the light of all the circumstances, this court does not abuse its discretion in holding that the election of members of the General Assembly must be proceeded with on November 3, 1964, under the new apportionment plan as provided by S.B. 332 and S.B. 336.

For the reasons stated, the motion for a preliminary or interlocutory injunction will be denied.

The foregoing is deemed to constitute the findings of fact and conclusions of law required by Rule 52(a) Fed.R.Civ. Proc., 28 U.S.C.

An order will be entered concurrently with this opinion.