**ELGIN NATIONAL INDUSTRIES, INC.,**
Plaintiff,

v.

**CHEMETRON CORPORATION et al.,**
Defendants.

Civ. A. No. 3704.

United States District Court
D. Delaware.

May 5, 1969.

Irving Morris, Wilmington, Del., for plaintiff,

Louis J. Finger, Wilmington, Del., for defendants.

## OPINION

STEEL, District Judge:

Plaintiff, a large stockholder of corporate defendant, Chemetron, charges that defendants, in soliciting proxies for use at the Annual Meeting of Stockholders of Chemetron called for May 6, 1969, violated Rule 14a-9 promulgated under Section 14 of The Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). Accordingly, the plaintiff seeks an injunction temporary and final, (1) postponing the meeting for a reasonable time, (2) restraining the voting by defendants of proxies obtained pursuant to their solicitation, and (3) requiring defendants to resolicit if they desire to seek proxies. Plaintiff also seeks recovery of damages.[1]

Chemetron has about 3,700,000 shares of voting stock outstanding of which 3,600,000 are shares of common stock. (Proxy Statement p. 2). The shares are traded on the New York Stock Exchange. The plaintiff is the owner of 100,100 shares of Chemetron common stock.

The matter is before the Court upon plaintiff's motion for a preliminary injunction. The record consists of the unverified complaint, affidavit of Herbert S. Cannon in support thereof, affidavit of John P. Gallagher in opposition thereto, and briefs in favor of and in opposition to the motion. The matter has been orally argued.

Jurisdiction of the present action exists under Section 27 of The Securities Exchange Act of 1934. The venue of the Court has not been challenged.

Defendants have proposed for adoption by stockholders at the Annual Meeting an amendment to Chemetron's Certificate of Incorporation so as to provide (See Proxy Statement, Ex. 2 to complaint pp. 2-3),

(1) for the classification of directors;

(2) for their election for "staggered" three-year terms;

(3) for a two-thirds vote for any sale or exchange of assets;

(4) for a two-thirds vote to change these charter provisions, and

(5) for a two-thirds vote to eliminate cumulative voting.

The Proxy Statement mailed on March 28, 1969, contains the following passage

1. Only the corporate defendant has been served with process. The other defendants are directors of Chemetron and have not been served.

regarding the proposed amendment (p. 3):

"The Board of Directors is concerned with the current trend of tender and exchange offers which result in take-overs of public companies. The reason for the Amendment is to discourage persons from attempting to take over the Company. While management has no knowledge of any tender or exchange offers being contemplated at the present time, the Board of Directors believes it desirable to take action at this time to discourage such action and induce a potential acquirer to negotiate with management.

The Amendment is permitted by the General Corporation Law of the State of Delaware. The general effect of the Amendment is to make it difficult for a potential acquirer to obtain control of the Board of Directors since it will require two years to remove a majority and three years to remove the entire Board of Directors. In addition the required vote of stockholders to approve a sale of assets is increased to two-thirds, the same voting requirements as provided by statute in the case of a merger. The Board of Directors believes the adoption of the Amendment is in the best interests of the Company and its stockholders."

On April 9, 1969, Mr. Herbert S. Cannon and Mr. Richard G. Miller, Jr., directors of plaintiff, met with Mr. Charles Haines and Mr. John P. Gallagher, directors of Chemetron. At that meeting, according to Mr. Cannon, he and Miller suggested that a joint committee be formed to explore the possibility of a merger between plaintiff and Chemetron and fair and reasonable terms therefor. According to Cannon, Gallagher verbally replied that Chemetron wanted to remain independent and was not interested in merging with the plaintiff or any other company and accordingly would not negotiate. Gallagher's version of the meeting was different. He stated that he told plaintiff's representatives that:

"I did not believe it to be in the best interests of Chemetron's shareholders to even consider a merger of Elgin [plaintiff] with Chemetron at that time.[2]

In talking with plaintiff's representatives Gallagher said that:

"I made it clear to Messrs. Cannon and Miller that the management of Chemetron was not in the least hostile to the idea of making acquisitions of or engaging in preliminary conversations with companies interested in Chemetron." (Gallagher Affidavit, para. 6)

The Gallagher version of the conference can not be reconciled with that of Cannon. For the purpose of the present motion there is no reason to accept Cannon's statement as the more accurate of the two. Some of plaintiff's arguments, discussed in detail below, are based upon Cannon's claim that Chemetron wanted to remain independent and accordingly would not negotiate with plaintiff or any other company. The burden which plaintiff must bear to establish the accuracy of Cannon's testimony has not been met and the portion of the testimony referred to cannot be used to support plaintiff's motion.

One other matter was mentioned at the April 9, 1969, conference upon which plaintiff places reliance. According to Cannon (Affidavit, para. 17), Gallagher said that during the past year Chemetron had received approximately forty inquiries from different parties as to possible mergers. The affidavit of Galla-

---

**2.** The reasons which Gallagher gave for his position are stated in detail in paragraph 6 of the Gallagher affidavit. On their face they seem reasonable and logical. Gallagher also states (Gallagher Affidavit, para. 7) that having been advised of the interview with plaintiff's representatives in advance of its taking place, he had had certain studies made of the plaintiff which explained Gallagher's lack of interest in engaging in preliminary conversations with plaintiff at that time.

gher does not deny this assertion. Plaintiff, therefore, argues that it was false and misleading for the Proxy Statement to say that:

"Management has no knowledge of any tender or exchange offers being contemplated at the present time."

without at the time revealing that the Company had received approximately forty inquiries from different parties as to possible mergers.

Gallagher in his affidavit characterized these inquiries as "casual". He argued that they did not constitute facts which should be routinely disclosed to stockholders since "[c]asual inquiries of the sort received are relatively common today and cannot be elevated into matters of such importance as to require communication to shareholders." (Gallagher Affidavit para. 13).

■ The wisdom of passing on to stockholders approaches made to management concerning exchange or merger offers lies within the bona fide discretion of the directors. To make public every "casual" approach looking toward the joinder of two companies would in many instances be disconcerting to stockholders, occasion innumerable inquires concerning the terms, the extent of the discussion, possibility of consummation and the like, and, perhaps play an important part in unfortunate gyrations of the market price of the stock.

■ The failure of Chemetron to disclose in its proxy material the numerous casual inquiries of the prior year under the facts disclosed by the record did not constitute a violation of Rule 14a–9.[3] It may be that facts may be developed at final hearing which will lead to the opposite conclusion.

In addition to the argument concerning the non-disclosure of the merger inquiries, the complaint charges that the proxy statement contains five statements which are and were at the time,

in the light of the circumstances under which they were made, false and misleading with respect to material facts. These statements are (Complaint ¶ 9):

"(a) 'The Board of Directors is concerned with the current trend of tender and exchange offers which result in take-overs of public companies. The reason for the Amendment is to discourage persons from attempting to take over the Company.'

(b) ' * * * While management has no knowledge of any tender or exchange offers being contemplated at the present time, the Board of Directors believes it desirable to take action at this time to discourage such action and induce a potential acquirer to negotiate with management. '

(c) ' * * * The Board of Directors believes the adoption of the Amendment is in the best interests of the Company and its stockholders.'

(d) ' * * * The general effect of the Amendment is to make it difficult for a potential acquirer to obtain control of the Board of Directors. * *'

(e) ' * * * The proxy, if given, may be revoked by the stockholder giving written notice to the Secretary of the Company at any time prior to its being voted.' "

■ These so-called false and misleading statements require little comment. There has been no showing by plaintiff that (a) is false. The policy underlying the directors' position may be wrong (the Court does not suggest that it is), but no evidence exists to support the claim that the statement is false or misleading. The same observations may be made with respect to (b), (c) and (d).

■ As to (e), under the law of Delaware a proxy once given can be revoked by a stockholder personally appearing at the meeting and casting a contrary vote, or by giving a later proxy

---

3. It should be noted in passing that the complaint in detailing the violation of Rule 14a–9 makes no reference to the failure of Chemetron to say anything in its Proxy Statement about the forty casual inquiries of the prior year.

**372**

indicating a desire to vote differently than is indicated by his earlier proxy. The proxy material sent out by the defendant did not state these provisions of the Delaware law in express terms. But the plain implication of the material would disclose to any reasonable stockholder his rights. The notice of Annual Meeting of Stockholders states in terms that stockholders

"will be entitled to vote at the meeting. If you do not expect to attend the meeting please date, sign and mail promptly the enclosed proxy in order that * * * your shares may be voted for you."

█ The Proxy Statement states that the proxies solicited by management, if given

"may be revoked by the stockholder giving written notice to the Secretary of the Company at any time prior to its being voted."

The notice read in connection with the Proxy Statement implicitly provides a stockholder with notice of the rights accorded to him by Delaware law. There is no valid basis for the claim that, taken in context or otherwise, the statement referred to in (e) constituted a false and misleading statement of a "material" fact.

In addition, the complaint alleges that the Proxy Statement omitted to state the following facts which were necessary in order to make the statements therein not false and misleading (Complaint ¶ 10):

"(a) Despite the Board's avowed purpose to 'induce a potential acquirer to negotiate with management', management in fact had and has no intention of negotiating with potential acquirers.

(b) Adoption of the proposed amendment, together with management's intention to refuse to negotiate with potential acquirers, will reduce the possibility that opportunities will arise for stockholders to make substantial profits on the sale or exchange of their holdings.

(c) The 'general effect' of the proposed amendment is not only 'to make it difficult for a potential acquirer to obtain control' but also to entrench and perpetuate management's control of Chemetron.

(d) At least part of the reason for the amendment and the reason for the Board's 'concern' with the 'current trend of tender and exchange offers' is that management regards such trend as a threat to its control of Chemetron and its continued receipt of substantial emoluments which flow from such control.

(e) While the proposed amendment purports to be protective of the cumulative voting privilege, requiring a two-thirds vote to eliminate it, in fact the staggering of elections will dilute the cumulative voting privilege and make it more difficult for minority stockholders to obtain representation on the Board.

(f) Proxies given pursuant to management's solicitation could be revoked by methods other than 'giving written notice to the Secretary of the Company'."

█ Statements (a) and (b) are both based upon the premise that management has no intention of negotiating with potential inquirers. This premise is based upon Cannon's statement, which is at odds with Gallagher's statement. The burden which plaintiff has in order to carry the issue has not been met.

██ The alleged vice in statement (c) is the failure to tell the stockholders that the general effect of the proposed amendment is to entrench and perpetuate management's control of Chemetron. The fact is the Proxy Statement expressly states:

"The general effect of the Amendment is to make it difficult for a potential acquirer to obtain control of the Board of Directors."

It is self-evident that the advantage which management has in soliciting proxies in favor of incumbent directors is inherent in the control which manage-

ment possesses over the proxy machinery. But this does not make it wrong for a corporation to solicit proxies which tend to maintain in office incumbent directors without saying as much. Many corporations do this. Some candidates for directorships in some corporations, to be sure, have devious and self-serving purposes in seeking to be reelected. But in other instances the purpose of solicitation of proxies in favor of incumbents is to maintain in office experienced people having intimate familiarity with the corporation's affairs. In the absence of some intended act of wrongdoing by candidates who seek reelection there appears to be no reason why the stockholders should be advised that the proposed amendment may tend to facilitate management perpetuating itself in control. Certainly it is not false and misleading for the management to fail to do so. It is an obvious fact which is disclosed whenever management solicits proxies in favor of itself.

■ As to statement (d) there is no evidence to indicate that the Board's concern with the current trend of tender and exchange offers had its roots in management's apprehension that they would lose control of Chemetron and receipt of substantial emoluments and advantages. It is not to be assumed that management placed its own personal interest in controlling Chemetron above the interests of the stockholders of the Company. If the directors were as selfish as plaintiff would have it appear (and there is no proof that they are) it is to be noted that a takeover on advantageous terms to Chemetron would be of immense advantage to many of the officers and/or directors because of their own substantial stock interests in the Company. (See Proxy Statement p. 5).

■ As to (e), plaintiff claims that the adoption of the amendment classifying the directors and providing for their staggered election would dilute the cumulative voting rights of the stockholders, and thus make it more difficult for minority stockholders to obtain representation on the Board. This is true.[4] But the fact is that the Proxy Statement states that the purpose of the amendment (which includes the classification and staggering provisions) is "to discourage persons from attempting to take over the Company" and that "[t]he general effect of the Amendment is to make it difficult for a potential acquirer to obtain control of the Board of Directors. * * * " With these statements included in the Proxy Statement it is difficult to see how the Proxy Statement omits to state a material fact concerning classification, staggering, or cumulative voting, which fact is necessary in order to make the Statement not false or misleading.

Statement (f) has already been dealt with in discussing statement (e) of paragraph 9 of the Complaint.

■ A preliminary injunction in a case such as the instant one may only be granted where a plaintiff establishes a reasonable probability of eventual success in the litigation. Ikirt v. Lee National Corp., 358 F.2d 726 (3d Cir. 1966); Sincock v. Terry, 210 F.Supp. 396 (D.Del. 1962). Plaintiff has failed to make this showing.

■ Furthermore, a preliminary injunction will not issue, in circumstances of the present case, unless there is a

---

4. In the absence of the proposed classification amendment, fourteen directors are to be elected at the Annual Meeting, (Proxy Statement p. 4). This means that the holders of one-fourteenth of the voting stock are assured of the right to elect at least one director. On the other hand, if the classification amendment should be put into effect, the number of directors will be fixed by the by-laws at not less than three nor more than eight-

een. If eighteen directors were designated by the by-laws, and one-third were elected annually the effect upon stockholders would assure the holders of one-sixth of the voting stock the right to elect one director. The effective cumulative voting rights of the stockholders would be correspondingly reduced as the number of directors fixed in the by-laws was diminished.

likelihood of irreparable injury *pendente lite* to plaintiff if relief is not granted. Ikirt v. Lee National Corp., *supra;* Sincock v. Terry, *supra.* Again, there has been no such showing.

On balance, the denial of a preliminary injunction, when contrasted with the granting of such an injunction, appears to be the more equitable of the two. There is serious doubt about plaintiff's ability ultimately to win. If the voting of the proxies should be temporarily restrained and the annual meeting stayed for a reasonable time and it later appeared that the solicitation was valid, the corporation would be put to a certain amount of unavoidable expense and possible embarrassment with its stockholders. The stockholders would necessarily have to be given some advice why the meeting would not be held as scheduled, and probably informed that the proxies were under a cloud. This embarrassment, although it might be alleviated by a later notice, probably could not be completely cured. See General Time Corp. v. Talley Indus., Inc., 283 F.Supp. 832 (S.D.N.Y.1968); Sherman v. Posner, 266 F.Supp. 871, 874 (S.D.N.Y.1966); Mack v. Mishkin, 172 F.Supp. 855, 889 (S.D. N.Y.1959). On the other hand, if the meeting is held and the proposals of the management carried and the Court finds on final hearing that the management proxies were improperly solicited and voted the situation would be within the power of the Court to cure in some manner.

The Annual Meeting of Stockholders was called for May 6, 1969, by a notice and related proxy material sent out on March 28, 1969. The present action was begun on April 25, 1969, plaintiff's motion for a preliminary injunction was filed on April 28, 1969, and was argued on April 30, 1969. The time allotted the Court to consider the various questions raised by the motion was necessarily short and called for prompt action before the May 6th meeting date. An order was entered on May 2, 1969, denying the preliminary injunction motion. This opinion explains the reasons for the order.

The action by the Court denying the motion for preliminary injunction was thus taken under pressure of time. It is conceivable that a different conclusion may be arrived at after final hearing, although this is not to suggest that the Court has any reason at the moment to doubt the soundness of the present decision.

Pursuant to Rule 52, Fed.R.Civ.P., the foregoing opinion constitutes the findings of fact and conclusions of law which constitute the grounds for the denial of the preliminary injunction.