CRANE COMPANY, an Illinois corporation, Defendant and Appellant,

v.

BRIGGS MANUFACTURING COMPANY, a Michigan corporation, Plaintiff and Appellee.

No. 14244.

United States Court of Appeals
Sixth Circuit.

June 10, 1960.

James E. Tobin, Richard B. Gushee, Detroit, Mich., for appellant.

Monaghan, Monaghan & Crawmer, Detroit, Mich., and Joseph W. Louisell, Detroit, Mich., for appellee.

Before MARTIN, WEICK and O'SULLIVAN, Circuit Judges.

PER CURIAM.

Briggs Manufacturing Company sued Crane Company in the District Court for treble damages and injunctive relief under Sections 4 and 16 of the Clayton Act (15 U.S.C.A. §§ 15, 26). Briggs alleged that Crane had violated Section 7 of the Clayton Act, 15 U.S.C.A. § 18 in making purchases of shares of Briggs common stock.

Section 7 prohibits the acquisition of the assets or stock of one company by a competitor where the result would be a substantial lessening of commerce or the tendency to monopoly.

From August 25, 1959 until May 10, 1960 Crane purchased approximately 22% of the outstanding shares of Briggs voting common stock at a cost of about $2,300,000. Crane is now the largest single shareholder of Briggs. It is this acquisition that Briggs alleges to be violative of the Clayton Act.

Briggs moved for a preliminary injunction restraining Crane from soliciting proxies and voting this stock at Briggs' shareholders' meeting scheduled for June 17, 1960. Upon a hearing, a preliminary injunction was granted by the court and it is from that order this appeal has been taken. By agreement of the parties and because of the imminence of the shareholders' meeting, we advanced this case for immediate hearing. The only question presented to us was whether the preliminary injunction was improvidently granted.

Briggs manufactures plumbing fixtures, fittings and supplies. It deals with over 500 independent distributors throughout the country and some large chain store groups. Its total sales account for approximately 6% of the national market for its products and rank it as the sixth largest producer in its industry.

Crane likewise is engaged in the manufacture and sale of plumbing fixtures, fittings and supplies, in addition to other related products. Its 1959 sales of about $35,000,000 from these products rank it fifth in the industry and account for approximately 10% of the total dollar volume in the industry.

Crane has admitted that its program of purchasing Briggs stock was not for investment purposes. Rather, the purpose was to submit to the Briggs directors and shareholders proposals concerning the purchase of Briggs' assets by it. On November 23, 1959, Crane made an offer to the Briggs Board of Directors for the outright purchase of all the Briggs' assets. That offer was rejected. Crane's subsequent decision to gain control of Briggs by means of stock purchases received extensive publicity in the Wall Street Journal, trade journals and daily newspapers.

Affidavits filed in the District Court indicate that this has caused disturbance to Briggs' market position. Distributors have encountered substantial resistance to the sale and promotion of Briggs' products. Some architects and contractors have become hesitant to specify Briggs' products in contemplated buildings because of their uncertainty whether the products will be available for de-

livery at the time specified and at the originally quoted prices. The Chairman of the Board of Crane has acknowledged the probable widespread disturbance to Briggs' operations in a letter to Briggs' president.

On March 18, 1960 the Federal Trade Commission issued a complaint against Crane for violation of Section 7 of the Clayton Act, based in part on the acquisition of the Briggs stock.[1] Faced with the two actions Crane reconsidered its efforts to acquire Briggs' assets outright. Crane is now directing its efforts towards the election of its nominees to Briggs' Board of Directors. Crane has submitted seven nominees and is assured of the election of at least one, and probably two, by the cumulative vote of its own shares under 21 Mich.Stat.Ann. § 21.32, Comp.Laws Supp.1956, § 450.32.

■■ In an excellent opinion, Chief Judge Levin of the District Court considered in detail the primary question as to whether there is a reasonable probability that Briggs may prevail on the merits in the principal action, which is a predicate to the granting of an injunction pendente lite. His findings of fact on the questions presented (such as the relevant market and effect on competition) were supported by the evidence and his conclusions of law were justified by the authorities cited by him.

Crane argues that even if such a reasonable probability exists there must still be a balancing of the equities, and that the injunction should not stand.

Crane's principal contention is that it would be inequitable to prevent the Briggs shareholders from voting either on a proposed merger with Crane or for independent directors who would provide more dynamic leadership for the company.

Crane points out that its seven nominees have each filed an affidavit stating that they would act as an impartial and independent director, serving the best

interests of Briggs and would not be responsible in any manner to Crane.

The District Judge noted, however, that of the seven nominees none owned stock prior to August 28, 1959, which was several days after Crane commenced buying Briggs stock in the open market. Two purchased their shares after the filing of the complaint in this action and during or after the week in which Crane reportedly asked the seven to become nominees. It is not denied that two and possibly three candidates purchased their shares at the suggestion of Crane in order to enable them to be nominees for the Briggs' Board.

■ The District Judge reached the irresistible conclusion implicit in these circumstances—that Crane would support and elect nominees sympathetic to its objectives. It is only logical that should this come about the other directors and the management of Briggs would feel almost the same degree of restriction in their deliberations, particularly in confidential matters, as if an actual representative of Crane were on the Board. See: American Crystal Sugar Co. v. The Cuban-American Sugar Co., D.C.S.D.N.Y.1957, 152 F.Supp. 387, 394, affirmed 2 Cir., 1958, 259 F.2d 524; Hamilton Watch Co. v. Benrus Watch Co., Inc., D.C.Conn.1953, 114 F.Supp. 307, 314, affirmed 2 Cir., 1953, 206 F.2d 738.

■■ Taking Crane at its word, that it is only interested in having directors elected who will serve the best interests of Briggs, no damage should result to it from this injunction. There is no evidence in this record that any nominees for the Board which may be proposed by Briggs' management or its shareholders generally will act in a manner adverse to the best interests of Briggs. The Court cannot assume that the directors which will be elected will be derelict in their duty. Crane has been unable to establish the probability of any injury to it as a result of the injunction.

1. The Federal Trade Commission filed a brief amicus curiae in the District Court in support of the motion for preliminary injunction.

If Crane is successful in the principal case it can then vote its shares in any manner it deems proper.

██ Having considered Crane's equities in the matter let us consider the potential harm which may come to Briggs if the injunction does not stand. We start with the assumption that in all probability two Crane nominees will be elected to the Briggs' Board.

We have heretofore mentioned the existing disruption to Briggs' business by the public avowal of Crane to gain control of Briggs. The election of Crane nominees to the Briggs' Board will make it difficult for Briggs to deny that Crane has a role in formulating Briggs' policies. This in turn has the potential of increasing the sales resistance being met by Briggs' distributors.

The most serious ramification though is the "listening line" which Crane would have in Briggs. As Chief Judge Levin stated "since the two companies are competitors, the Briggs Board would be unable to perform its proper functions in connection with the management of the company without divulging to a competitor confidential information with respect to the development of processes and techniques; plans for improvement of products and plans for sales and promotion campaigns." 185 F.Supp. 177, 181. Furthermore, with two sympathetic representatives on the Board, Crane will have driven the wedge in its attempts to gain control of Briggs' assets.

Crane argues though that an order of divestiture following a decision for Briggs on the merits would effectively restore the corporations to their prior separate competitive positions. This argument ignores the practicalities of the matter and the effect that participation of Crane in the business affairs of Briggs may have on the financial position of the latter. By the time a decision is rendered in the principal action Crane may well have progressed to a point in its efforts to improve its own manufacturing and supply facilities by the acquisition of Briggs' facilities that a divestiture decree would be ineffective to repair the damage done to Briggs' employees and distributors. It may be doubtful that Briggs could reactivate itself as a vigorous competitive entity. It has been said that after the saber thrust, the wound is still there. The purpose of the injunction is to prevent the wound if it is at all possible to do so.

The District Judge concluded that the equities in this case were clearly in Briggs favor. We agree with his decision.

The District Court will have control over this case and may make appropriate orders for the protection of the parties should there be any undue delay.

The order of the District Court is affirmed.