**AMERICAN CRYSTAL SUGAR COM-
PANY, Plaintiff,**

v.

**The CUBAN–AMERICAN SUGAR COM-
PANY, Defendant.**

**No. Civ. 108–55.**

United States District Court
S. D. New York.

Nov. 13, 1967.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for plaintiff, John F. Sonnett, Jerome Doyle, Loftus E. Becker, New York City, Donald S. Graham, Davis, Graham & Stubbs, Denver, Colo., of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant, Ralph M. Carson, Thomas P. Griesa, New York City, of counsel.

## OPINION

WEINFELD, District Judge.

The plaintiff, American Crystal Sugar Company (American Crystal), seeks construction of a final judgment entered in this action [1] by the Honorable Archie O. Dawson, which, among other matters, decreed that the acquisition of plaintiff's stock by the defendant, North American Sugar Industries, Inc. (North American),[2] violated section 7 of the Clayton Act.[3] The court, while finding the evidence insufficient to establish that North American's ownership of American Crystal stock substantially lessened competition in any line of commerce in any section of the country, did further find that unless enjoined there was a reasonable probability North American would con-

tinue to buy American Crystal stock with a view to control and the eventual merger or other joint operation of plaintiff and defendant, who were in competition, the effect of which would be to substantially lessen competition in the sale of refined sugar.[4] The final judgment provides:

"2. Defendant, its officers, employees and agents are permanently restrained and enjoined from voting, either directly or indirectly, any shares of stock of the company which defendant may own or control, either directly or indirectly, at any meeting of plaintiff's stockholders."

The defendant was also enjoined from acquiring, directly or indirectly, any stock of the plaintiff in addition to that which it owned upon the entry of judgment in June 1957. The defendant then owned 97,100 shares of American Crystal stock, about 23% of its voting stock. In the ten years that have passed it has reduced its holdings so that at present it owns 9% of the outstanding common stock and approximately 8.5% of all plaintiff's outstanding stock entitled to vote (preferred and common). David M. Keiser, president of the defendant corporation, acted in a similar executive capacity when it acquired the shares of stock which resulted in the judgment herein. Keiser, or his family trusts, own 3.29% of preferred and common stock and the plaintiff alleges that by reason thereof North American in fact now controls approximately 12% of the outstanding shares of plaintiff. The judgment did not enjoin Keiser with respect to his individual stock. Also, the court declined the plaintiff's proposal that he and North American divest themselves of their stockholdings.[5]

1. American Crystal Sugar Co. v. Cuban-American Sugar Co., 152 F.Supp. 387 (S.D.N.Y.1957), aff'd, 259 F.2d 524 (2d Cir. 1958).

2. The name of the defendant originally was The Cuban-American Sugar Company, but was changed by corporate action.

3. 15 U.S.C. § 18.

4. 152 F.Supp. at 392–93.

5. Judge Dawson, who reviewed the facts in an extensive opinion and made detailed findings of fact, held that divestiture was "not necessary." 152 F.Supp. at 401. In view of this holding, United States v. El Paso Natural Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), and United States v. E. I. du Pont de Nemours & Co., 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961),

The motions now before the court have been precipitated by an agreement and plan of merger entered into in September 1967, under the terms of which American Crystal, a manufacturer and distributor of sugar derived from sugar beets, and Potash Company of America, a producer and distributor of potash, would be merged into and become divisions of Ideal Cement Company, a producer and distributor of cement. The proposed merger is to be considered and voted upon by plaintiff's stockholders at a special meeting to be held on December 6, 1967. Under the plan, the common and preferred stock of American Crystal is to be exchanged, at stipulated ratios, for stock of Ideal Cement Company, the surviving corporation.

Keiser, on or about September 22, advised American Crystal that he, individually and as president of North American, was opposed to the merger on the ground that it was inequitable to plaintiff's common stockholders. His subsequent request that plaintiff forward to fellow stockholders a letter from him and the defendant expressing their views on the merger was refused, following which both instituted an action in the state courts of New Jersey for a stockholders' list, which relief was granted to Keiser, but denied to North American.[6] Thereupon American Crystal brought this proceeding to construe or modify the final judgment, the effect of which would be to enjoin North American, its officers and agents from attempting to influence, directly or indirectly, any stockholder in the exercise of his voting rights in respect of American Crystal stock—in sum, to enjoin them from soliciting proxies or otherwise communicating with other stockholders relative to the proposed merger. In addition, further modification of the decree is sought declaring Keiser is in active concert and participation with North American, and that having received actual notice of the final judgment he is individually bound by its provisions under Rule 65(d) of the Federal Rules of Civil Procedure. The clear purpose of this sought-for modification is to prevent Keiser, in his capacity as an individual stockholder, from soliciting proxies from, or communicating with, other stockholders.

North American cross-moves to amend the judgment to authorize it to vote its 9% holdings upon the proposed merger. The relief it seeks is identical to that which plaintiff, through its counsel, consented to in a written stipulation dated October 11, 1967,[7] but withdrew after its submission to the Chief Judge, whose approval was delayed pending the production of the file from the court's warehouse. The asserted ground of withdrawal was that plaintiff had not contemplated that defendant would campaign against the merger.

First, as to North American, the defendant. The motion and cross-motion

---

both of which are relied on by plaintiff in support of its proposed construction or modification of the decree, are inapposite to the issues presented herein. While those cases may have established divestiture as the preferred remedy for stock acquisitions in violation of § 7, this court is "not at liberty to reverse under the guise of readjusting." United States v. Swift & Co., 286 U.S. 106, 119, 52 S. Ct. 460, 464, 76 L.Ed. 999 (1932) (Cardozo, J.).

6. The denial by the New Jersey court of North American's request for the stockholders' list allegedly was based upon the existence of the judgment herein and advice to the court that the parties planned to obtain a construction of its provisions.

7. The stipulation would have amended the decree as follows: "PROVIDED HOWEVER that this Paragraph 2 shall not apply to voting by defendant at any stockholders meeting of plaintiff upon the proposed merger of plaintiff and Potash Company of America into Ideal Cement Company referred to in plaintiff's letter to stockholders dated August 19, 1967, whether in the same or any other form, the intent of this proviso being that in respect of said proposed transaction or modification thereof the rights of defendant as stockholder of American Crystal Sugar Company shall be the same as if this judgment had not been made or entered."

present as to it two separate issues: (1) should the injunction against voting its stock be continued or lifted, specifically with reference to the merger proposal, and (2) in any event, should the defendant be permitted to solicit proxies or, if permission is withheld, should it nonetheless be authorized to communicate with other stockholders relative to the proposal.

The purpose of the judgment has thus far been realized, and as far as appears from this record the defendant and its officers have respected the court's mandate. The injunction against direct or indirect representation on the Board of Directors has been observed; no charge is made of any conduct in violation of the decree during the ten years of its existence. The decrease in defendant's holdings to 9% from 23% at the time of the entry of the decree not only suggests compliance with, but militates against the likelihood of any violation of, its provisions. While the acquisition by the defendant of the plaintiff's stock was found to be not for investment purposes, the reduced holdings are of substantial value—about $2,500,000 at current market prices—an interest defendant is entitled to protect unless barred by other considerations.

In general, the defendant and Keiser oppose the merger upon a claim that the proposed exchange of stock would effect a substantial dilution in the earning power and book value of American Crystal common stock. Other objections are advanced. We do not, of course, pass on the merits of these claims. However, no substantial reason has been advanced why the defendant, with respect to a merger, which, according to its view, may dilute the value of its security, should not be permitted to protect its interest.

■ Further, a merger could work a radical change in the basic nature of American Crystal. Instead of an enterprise engaged solely in the refining of beet sugar and distribution of sugar as a finished product, the business would be diversified to include the manufacture and distribution of cement and the manufacture and distribution of potash—certainly quite unrelated to sugar. Approval of the merger will transform plaintiff from a single self-sustained entity to a division of a larger organization. This may be a benefit or a detriment to stockholders—it is not for the court to say. But whatever its merits or demerits, the change is of such substantial nature and so unrelated to the antitrust charges that the defendant should be permitted to vote its stock on the merger issue. As already noted, plaintiff's counsel at one time consented to exactly that, which consent was recalled when the defendant manifested a purpose to make its opposition known to other stockholders.

Moreover, the voting by North American of its stock on the merger proposal does not as a practical matter increase the burden upon plaintiff's management in securing stockholders' approval, since an affirmative vote of 66⅔% of the outstanding shares of stock entitled to vote is required for approval. Thus, the negative vote of the defendant would not affect the requirement of the necessary approval vote. The cross-motion is granted to the extent of permitting North American to vote its stock of American Crystal on the proposed merger.

■ The next question is whether, in addition to permitting North American to vote its stock, the restraint of the decree should be lifted so as to permit it to solicit proxies of other stockholders with respect to the merger proposal. It is all too clear that voting the stock of another under a proxy is an exercise of the right of ownership; to do so would constitute a violation of the terms of the decree enjoining the defendant, its officers and employees, from voting, either directly or indirectly, any stock of plaintiff which the defendant "may own or control, either directly or indirectly." To allow defendant to vote the stock of others would violate both the purpose and spirit of the decree. This branch of the cross-motion is denied.

■ Plaintiff also seeks to enjoin David M. Keiser, defendant's president, from voting his shares upon the merger, and from soliciting the proxies of other stockholders. Keiser is clearly entitled to vote his individually held shares. In addition to the fact that by its terms the decree does not restrain Keiser from exercising his voting rights, the reasons for permitting defendant to vote its shares, which have been set forth above, apply with equal force to compel denial of plaintiff's similar request with respect to Keiser. The next issue is whether Keiser should be permitted to solicit the proxies of other shareholders.

■ Keiser, as chief executive of the defendant, was the moving force in the acquisition of plaintiff's stock that gave rise to the section 7 suit and led to the decree enjoining the voting and the other restrictions imposed thereunder. His avowed purpose was to bring about a closer connection between the two companies by merger or otherwise—a purpose foreclosed by the decree. Keiser directly or indirectly owns approximately 26% of the North American outstanding stock. It is not challenged that this stock gives him effective control over all of its activities. It is realistic to recognize that his interest as an individual stockholder of American Crystal coincides with the defendant's as a stockholder in American Crystal. In view of this identity of interest between Keiser and defendant, and his effective control over the defendant, it is a fair and reasonable inference that any solicitation of proxies by Keiser individually would necessarily serve the interest of the defendant and indirectly gain for it the voting strength of any proxies that may be granted to Keiser. Since North American is prohibited from soliciting proxies relative to the merger proposal, Keiser likewise should be enjoined to assure that the purpose of the decree in denying North American voting power is not weakened.

Different considerations apply with respect to Keiser's and the defendant's request as stockholders of plaintiff to communicate their views to other stockholders, who number approximately 3,000 and are widely scattered. It is recognized that even though a direct solicitation of proxies, whether by the defendant or Keiser, is foreclosed, a communication may cause a fellow stockholder to refrain from granting a proxy or cancelling one previously granted and is deemed a solicitation for proxies.[8]

The plaintiff urges that Keiser and the defendant should be further enjoined from communicating with the stockholders at large, contending that if permitted, such action would be tantamount to an exercise of the other stockholders' voting power. Plaintiff contends this poses a threat to the integrity of the decree herein and could serve to frustrate its basic purpose to avoid a substantial lessening of competition between plaintiff and the defendant, who now, as at the time of the entry of the decree, are important competitors in the refining and sale of sugar. Thus, the thrust of plaintiff's opposition is that to permit Keiser and the defendant to transmit their views to other stockholders would attenuate the force of the decree and thereby enable the defendant to achieve its original purpose of a "closer connection between the two companies, whether by merger or otherwise."[9] But just how this feared consequence will come about is not made clear, and nothing in the record supports this alleged threat.

■ Entirely apart from the fact that the decree has been observed to date, an overriding consideration is the right of the stockholders of a corporation to have all pertinent and material information whenever called upon to exercise their

---

8. 17 C.F.R. § 240.14a–1(f). "SOLICITATION. (1) The terms 'solicit' and 'solicitation' include: * * * (iii) The furnishing of a form of proxy or other communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy."

9. 152 F.Supp. at 393.

right of corporate suffrage [10]—in this instance the right to have the information which necessarily embraces the views of those who oppose, as well as those who favor, the merger. As this court stated it in another context relating to proxy statements: "Congress * * * intended that investors would fully and fairly receive all pertinent information in connection with the exercise of their voting power * * *." [11] To have one side of a picture hardly fulfills this requirement.

Here the plaintiff, or, more accurately, management, has presented its views to the stockholders. In a letter which accompanied the plan and solicited their proxies, management recommended approval of the merger as in the "best interests of all our stockholders." It noted the opposition of the defendant and Keiser as "not well founded," but failed to disclose the basis of their opposition. It called the attention of the stockholders to defendant's past dereliction, to the antitrust decree, its terms, and emphasized that North American was still in competition with the plaintiff. In sum, management stated its position to the stockholders as fully as it is advanced here.

■ In the circumstances it seems, at least to this court, that simple fairness to the stockholders, apart from any consideration of the claims of the plaintiff, defendant and Keiser,[12] requires that the latter also be permitted to communicate with the stockholders. Only on the basis of all the facts can a stockholder be expected to make a considered decision as to whether it is in his economic interest to support or reject the merger. That the views of the defendant or Keiser may lead to a withdrawal or a revocation of a proxy, or even rejection of the merger, is beside the point.

Management attacks the motives of the defendant and Keiser in their opposition. Whatever their motivation, it does not justify depriving the stockholders of their right to have material facts and the opposing views based thereon. Management adopts a paternalistic attitude toward the stockholders when it suggests they may be unduly influenced by the defendant and Keiser to vote against the merger, since they are substantial stockholders. This disparagement of stockholder intelligence disregards the fact that management in its letter to the stockholders endorsing the proposed merger, stressed the defendant's past misconduct which resulted in the injunction against it; thus, it may be assumed that the stockholders are aware that the objection to the merger may be tainted by self-interest and that such opposition will be appraised accordingly. Surely stockholders, once informed of the facts, have a right to make their own decisions in matters pertaining to their economic self-interest, whether consonant with or contrary to the advice of others, whether such advice is tendered by management or outsiders or those motivated by self-interest.

Plaintiff's insistence upon silencing the defendant and Keiser is difficult to understand. Any communication must comply with the statutes and regulations requiring accurate statements in communications to stockholders.[13] Any proposed communication by the defendant and Keiser must undergo the careful scrutiny of the SEC under its exacting requirements.[14] In this court's view there is substantial reason why the stockholders should have available to them every argument and contention, for or

10. See J. I. Case Co. v. Borak, 377 U.S. 426, 431–432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

11. United States v. Pope, 189 F.Supp. 12, 22 (S.D.N.Y.1960). See SEC v. Transamerica Corp., 163 F.2d 511, 518 (3d Cir. 1947), cert. denied, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 418 (1948);

Laurenzano v. Einbinder, 264 F.Supp. 356, 362 (E.D.N.Y.1966).

12. Cf. SEC v. May, 229 F.2d 123, 124, 55 A.L.R.2d 1123 (2d Cir. 1956).

13. SEC Act of 1934, § 14(a), 15 U.S.C. § 78n(a) ; 17 C.F.R. § 240.14a-9.

14. See 17 C.F.R. §§ 14a-1 to -101.

against the proposal. To require less is to deprive them of the substance of their suffrage.

In the circumstances the defendant and Keiser are authorized to communicate their views to plaintiff's stockholders, subject, of course, to the requirements of the statutes and the rules and regulations of the SEC. The foregoing disposition is applicable solely to the merger proposal.

If the parties can agree upon the form of an order consistent with the foregoing, it may be submitted forthwith; if not, settle order on one day's notice.