**GENERAL TIME CORPORATION,**
Plaintiff,

v.

**TALLEY INDUSTRIES, INC., Franz G. Talley, M. Kimelman & Co., Michael G. Kimelman, Oscar Kimelman, Donald D. Harrington, Individually, and as Chairman of the Independent Stockholders' Committee of General Time Corporation, and American Investors Fund, Inc., Defendants.**

**TALLEY INDUSTRIES, INC., Defendant and Additional-Party Plaintiff,**

v.

**Barton K. WICKSTRUM and Don G. Mitchell, Additional-Party Defendants.**

No. 68 Civ. 1399.

United States District Court
S. D. New York.

April 11, 1968.

Chadbourne, Parke, Whiteside & Wolff, New York City, for plaintiff-petitioner; Paul G. Pennoyer, Jr., New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant-respondent; Walter L. Stratton, New York City, of counsel.

## OPINION

TYLER, District Judge.

The General Time Corporation ("GTC") has petitioned this court for a preliminary injunction pursuant to Rule 65(a), Fed.R.Civ.P., and Section 14 of the Securities and Exchange Act, 15 U.S.C. § 78n (1964), enjoining the defendants,[1] their officers, directors and all others acting on their behalf, from soliciting or voting proxies or shares in connection with GTC's annual stockholders' meeting scheduled for April 22, 1968.

This motion was brought on by an order to show cause dated April 5. An evidentiary hearing was held on April 8 and affidavits were submitted at that time.

For reasons to be discussed hereinafter, I conclude that plaintiff has failed to establish that it is reasonably certain to prevail at a plenary trial.

Furthermore, any injury that GTC would incur because of a denial of a preliminary injunction would probably be outweighed by the considerable harm that such an injunction would cause to defendants. See, e. g., Unicon Management Corp. v. Koppers Co., 366 F.2d 199 (2d Cir. 1966); Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966). Accordingly, plaintiff's motion is denied.

The Independent Stockholders' Committee of General Time Corporation ("the Committee") and one of its members and sole financial supporter, Talley Industries, Inc. ("Talley"), appear to be the most important defendants in this suit. The Committee's holdings of GTC stock, including that portion owned by Talley, amount to some 19% of the outstanding voting shares.[2] In its proxy solicitation material, the Committee has proposed ten nominees for positions on the GTC Board of Directors. The proxy contest growing out of this confrontation with the incumbent directors is the subject matter of this litigation.

The first hint of controversy was brought to the attention of the public on February 19, 1968 when Smith, Barney & Co., a Wall Street brokerage firm, announced a special bid for 200,000 shares of GTC. According to the Dow Jones Broad Tape, the initial reaction of GTC's management was to label the bid "grossly inadequate".[3] That same day, GTC learned from Smith, Barney & Co. that

1. Defendant Donald Harrington has not been served and he, therefore, is not a party to this motion.

2. An additional 10% of GTC stock is owned by another defendant, American Investors Fund ("the Fund"). Talley and the Committee disclaim in their proxy material any affiliation with or control over the Fund. Because of articles which have appeared in print, however, the Fund has been required to file and has filed a schedule 14(b) statement with the SEC, but it has disclaimed any intention to solicit proxies for the Committee and apparently has refrained from doing so.
Talley has requested that the SEC find it and the Fund are not affiliated within Section 17 of the Investment Company Act, 15 U.S.C. § 80a–17 (1964), or in

the alternative, if an affiliation is found, that it be validated by the Commission *nunc pro tunc.* GTC's stockholders have been notified of this pending proceeding in the Committee's solicitation material.

3. This and other statements by GTC's management are the subject matter of Talley's counterclaim and third-party claim asserted in the case at bar. Though preliminary relief on these claims was requested by Talley in the papers filed in open court on April 8, proper notice of the claims was not given to plaintiff, issue has yet to be joined and defendant neither brought its request for preliminary relief to the attention of the court nor adduced any evidence in support of such relief. Therefore, it is evident that none of Talley's claims is presently before this court.

Talley was behind the special bid, and an afternoon meeting of GTC and Talley management was hastily arranged.

According to the testimony of Frank Stone, one of plaintiff's attorneys present at the meeting, Franz Talley, President of Talley Industries, represented to GTC management that he and his associates then owned "about a third of the outstanding shares of General Time" and he was interested in effecting a merger between the two companies.

At the advice of counsel, GTC issued a press release that day and sent an open letter to its stockholders the following day, divulging this information and again urging GTC stockholders to reject the special bid. Stone firmly denied that there was any agreement to keep the substance of the conversations at the meeting from becoming public.

Within the next week, Talley and its associates purchased an additional 7% of GTC stock. On February 27, Talley announced in a press release that it then owned about 12% of GTC's stock and that recent purchases of that stock by "others known to Talley" exceeded another 28%. The announcement continued by noting that "these latter shares if taken together with the Talley Industries' interest would total more than 40 per cent of the outstanding stock of General Time." The release also confirmed that Talley was contemplating a merger with GTC.

The February 29th edition of the Wall Street Journal carried an account of the release under the headline, "Talley and Associates Claim 40% Ownership of General Time Stock." The article quoted from the text of the release and stated *inter alia* that Talley "said it and its associates hold more than 40%" of GTC's stock. This story was repeated by Standard & Poor's in its March 8th report.

The record before this court, including various schedule 14(b) statements on file with the SEC and the proxy solicitation material sent out by the Committee, indicates that Talley and its associates on the Committee own 19.3% of GTC's stock. From this, plaintiff submits that either:

(1) The 14(b) statements and the proxy solicitations are false and misleading; or

(2) Some of Talley's associates have failed to file 14(b) statements; or

(3) Talley is guilty of misleading the public by pre-solicitation publicity that it controlled 40% of GTC's stock.

Talley claims that none of these allegations is true, relying on the facts stated in the 14(b) statements and proxy solicitation materials and denying that Talley or anyone acting in its behalf ever asserted that it and its associates owned 40% of GTC's stock.

■ Plaintiff has specifically requested that for the purposes of the motion for a preliminary injunction, this court make two findings of fact. Accordingly, I find that there is a reasonable likelihood that Franz Talley made the statement attributed to him concerning the extent of Talley's holdings at the February 19th meeting. On the other hand, I cannot at this time reasonably find that Franz Talley or any of the other defendants is directly responsible for the statement in the February 29th edition of the Wall Street Journal concerning the extent of Talley Industries' control of GTC stock. It seems at least equally likely that the statement was based upon reference to GTC's discussion of Talley control in its February 19th and 20th releases. Further, I infer from the general nature of the February 19th meeting and the absence of any public reference by defendants to that meeting, that Franz Talley's remarks were probably considered by him to be off the record.

■ With these findings, I turn first to plaintiff's allegation that defendants violated § 14 by publicly disseminating misrepresentations calculated to have a bandwagon effect on other stockholders. On the evidence so far adduced, I cannot find that defendants are guilty of pre-solicitation activities that violate § 14. Cf. Studebaker Corp. v. Gittlin, supra. The Wall Street Journal article notwith-

standing, Talley has never publicly claimed it owned or controlled anything approaching 40% of GTC's stock. As I read its earliest public statement, dated February 27, it does no more than indicate that if a certain, impliedly small group of stockholders known to Talley and owning 28% of GTC's stock was disposed to voting with Talley, then their combined block would constitute over 40% of GTC's stock. In light of the fact that GTC made public what apparently was Franz Talley's attempt to privately pressure GTC management with an exaggerated statement of the extent of Talley's control, it seems reasonable that Talley would make this guarded explanation to the public to explain the high percentages and avoid having its own stockholders unduly worry about their own interests.

The case law simply does not support the extraordinary remedy of a preliminary injunction in these circumstances. Franz Talley's private representations to GTC management on February 19 cannot by any stretch of the imagination be deemed to be pre-solicitation activity violative of § 14.

Further, and most importantly, whatever misinformation concerning Talley's ownership of GTC stock was made public, the solicitation materials sent out by the Committee in the March 27 and April 5 mailings amply set out the extent of Talley's holdings and those of the other Committee members. In addition, they fully explain the source of the 40% control figure bandied about in the press.

■ As in many proxy contests, statements which could not withstand withering cross-examination if made in open court somehow have found their way into the press.[4] Nevertheless, in this case the solicitation material of the defendants has apparently set the record straight. In particular, I find that defendants' latest mailing of April 5 serves to put the facts in reasonable perspective.

The SEC, which has primary jurisdiction in the protection of investors, has screened the Committee's solicitation material and failed to oppose it. This failure is of at least some weight in support of the validity of defendants' activities. See Kauder v. United Board & Carton Corp., 199 F.Supp. 420 (S.D. N.Y.1961).

■ Finally, as already suggested, there is no showing that the Committee's solicitation materials and 14(b) statements filed in their support are materially untrue or misleading or that any of Talley's associates has failed to file the required statements. Therefore, I cannot say at this time that there is a reasonable likelihood that plaintiff will prevail on this branch of its claim.

As a subsidiary to its foregoing claim, GTC alleges that Talley unlawfully included the stock owned by American Investors Fund in the computation of 40% ownership. See footnote 2, supra. As I view the facts on this preliminary showing, Talley has never publicly or privately claimed this. In addition, the Committee has carefully set out its relationship with the Fund in its solicitation materials. Since there was no testimony adduced in this connection at the preliminary hearing and the disputed issues of fact are presently before the SEC in a related matter, no preliminary injunction may be granted on this basis either.

■ The next claim made by GTC is that defendants' use of the name "Independent Stockholders' Committee of General Time Corporation" is misleading in that:

(1) The Committee is composed wholly of persons connected with Talley Industries and is, therefore, not independent;

(2) Five of the ten individual members of the Committee are not stockholders of GTC; and

(3) The 14(b) statements and proxy solicitations of defendants fail to describe

4. Indeed, the February 27th edition of the Wall Street Journal quotes GTC's President as claiming that GTC's management held between 6 and 7 per cent of GTC's stock. The record before this court would seem to indicate that the true figure is closer to 2–3 per cent.

the terms, conditions and due dates of repayment of loans made to members of the Committee to purchase the bulk of the GTC stock.

No case has held that the use of the word "independent" in connection with a stockholders' organization is in and of itself violative of § 14. The term apparently is used often in proxy contests without unduly misleading stockholders, and this factor was undoubtedly the basis on which the SEC cleared its use in defendants' materials, notwithstanding plaintiff's opposition.

In the one case where a committee incorporating the word into its name was enjoined from using its proxies, the court failed to advert to the use of the word "independent" as the grounds for the relief granted. See SEC v. May, 134 F.Supp. 247 (S.D.N.Y.1955), aff'd, 229 F.2d 123, 55 A.L.R.2d 1123 (2d Cir. 1956). Instead, the injunction was granted because the Committee falsely stated that one of its members was acting on behalf of certain named stockholders and a key individual behind the Committee attempted to conceal the nature and extent of his activities because of a previous Securities Act conviction. Misrepresentations of this nature seem wholly absent in this case.

In another case relied upon by the plaintiffs, Union Pacific R. R. v. Chicago & N. W. Ry., 226 F.Supp. 400 (N.D.Ill.1964), the Committee in question did not use the word "independent" in its name. It was enjoined partially on the ground that it was shown to be a mere paper organization, representing only ³⁄₁₀ of one per cent of the corporation's outstanding stock. Of further significance to the court in that case was the fact that a broker's report was distributed as part of the defendants' solicitation activities, although it had not been cleared by the SEC.

While it is true that five of the members of the Committee in the case at bar are not owners of GTC stock, that fact is clearly set out in the defendants' proxy materials. Furthermore, the Committee's various members control a highly significant proportion of GTC's stock and there is no showing that it is a mere paper committee. The Committee is obviously independent of the present management of GTC. Under these circumstances, the use of the term independent in the Committee's name is not misleading.

As for the defendants' failure to be more specific on the loans made to them to purchase the GTC stock, suffice it to say that the data found in the proxy solicitation material and schedule 14(b) statements was sufficient to meet the requirements of the SEC and the data claimed to be missing appears immaterial. Further, there is authority in this circuit which precludes a claim such as this. See Subin v. Goldsmith, 224 F.2d 753, 776 (2d Cir. 1955).

The remainder of plaintiff's claims are too insubstantial to merit individual discussion. Undoubtedly, if plaintiff and its management had been given authority to rework defendants' materials in a manner suitable to themselves, the Committee's finished product would have been altered somewhat. Nevertheless, the materials issued by defendants are sufficiently exhaustive, concise and, so far as the facts have been brought out in the preliminary hearing, true. The stockholders who endeavor to read them through will be at least as fairly educated as any other constituents in a similar democratic election.

I am convinced that this proxy contest has been carried on within the guidelines set down by § 14 of the Exchange Act and the SEC Rules. If there were immaterial misstatements attributable to the defendants, there were similar misstatements which can be attributed to the plaintiff. While GTC can make claims about the Committee's solicitation activities which cannot be dismissed as wholly frivolous, the opposite is also apparently true. See footnotes 2 and 4, supra. In the final analysis, the parties' proxy material now before the stockholders constitutes a good basis upon which they can make an informed choice.

The balance sought by the framers of § 14 would seem to have been achieved.

Yet, if I were to issue a preliminary injunction at this point, only eleven days before the annual stockholders' meeting, its issuance would undoubtedly come to the attention of a large number of GTC stockholders. Regardless of how the parties and the mass media attempted to explain the significance of the order, a substantial number of stockholders would inevitably conclude that GTC's management was thoroughly vindicated and the Committee's name had been blackened by a court of law. Thus, the balance would be drastically shifted in favor of the plaintiff.

Accordingly, I deny plaintiff's application for a preliminary injunction. It is so ordered.