William C. McCONNELL, Jr., S. Paul Jones, Robert M. Miller, Dillman A. Rash, William D. Miller, Talbot Allen, Paul G. Counihan, C. Eugene Farnam, Richard O. Kearns and Ralph C. Fox, Plaintiffs,

v.

Allan P. LUCHT et al., Defendants.

No. 70 Civ. 5020.

United States District Court, S. D. New York.

Nov. 19, 1970.

Shea Gallop, Climenko & Gould, New York City, for plaintiffs; Milton S. Gould and Cleary, Gottlieb, Steen & Ham-

ilton, George Weisz, New York City, of counsel.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendants Servomation Corp. and William G. Maloney; Roswell B. Perkins, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

An annual meeting of defendant Servomation Corp. is scheduled to be held on November 20, 1970, pursuant to a notice sent to stockholders on October 22. Plaintiff stockholders commenced this action only four days before the scheduled meeting, and now seek a preliminary injunction adjourning the voting of proxies obtained by the Management of Servomation. More specifically, plaintiffs seek to enjoin the closing of balloting or the transaction of any business other than the establishment of a quorum at the meeting; ordering that it be adjourned to December 15, 1970; enjoining the voting of any proxies obtained pursuant to the proxy statement of Management dated October 20, 1970, or pursuant to Management's "Message" to stockholders dated November 12, 1970, and ordering that the voting at said Annual Meeting be by secret ballot.

■ As may be suspected, the action involves a proxy contest—or, as plaintiffs allege, a "power struggle," between dissident forces and the existing Management. The action centers about a proposal by Management to be voted upon at the Annual Meeting for the elimination of cumulative voting. The plaintiffs constitute a committee which styles itself "Stockholders Committee to Retain Cumulative Voting" (hereafter "the Committee"), and has been soliciting proxies in opposition to Management.

The challenge to Management is spearheaded by two plaintiffs, Committee members McConnell and Jones, long identified with Servomation, who in past years served as directors, one recently elected by cumulative voting, and whose

reelection as directors will be threatened if cumulative voting is eliminated. There are the usual charges and counter-charges between contending groups. Jones and McConnell, two of the eleven founders of the company, allege that since 1968, when a new President was installed, each has been relieved of positions formerly held. Various allegations as to the conduct of corporate activities are levelled against Management. In turn, Management attributes shortcomings to the individuals while in the service of the company.

The Board of Directors of Servomation, at a regular meeting held on September 16, 1970, recommended to the stockholders that at the annual meeting to be held on November 20, 1970, approval of a proposed amendment to Servomation's Certificate of Incorporation to eliminate cumulative voting. The Board at that meeting nominated eleven directors for reelection, but did not, as already noted, renominate plaintiffs McConnell and Jones, both of whom were present.

On October 22 Servomation mailed to its stockholders the Notice of Annual Meeting and proxy statement dated October 20. Plaintiffs, who were then in the process of organizing their proxy soliciting committee, mailed proxy material dated November 5, 1970, soliciting proxies (a) against defendants' proposal to eliminate cumulative voting, and (b) for the election of five directors nominated by plaintiffs. In this statement in opposition to management, in addition to inveighing against elimination of cumulative voting, the Committee also set forth at length its criticisms of Management in the conduct of corporate affairs. Thereafter, Management, on November 13, after filing with the Commission preliminary copies of supplementary material, responded to plaintiffs' attack by a "Message" to stockholders dated November 12.

Plaintiffs, as noted, commenced this action on the afternoon of November 16. The basis of their claim for relief is that Management's proxy statement and

its supplementary material or "Message" were misleading, in violation of Section 14 of the Securities Exchange Act and Rule 14a–9(a).[1] The attack is directed both to Management's proxy statement and the Message, and in particular to statements or alleged omissions with reference to the proposal to eliminate cumulative voting. The complaint alleges that Management, in urging elimination of cumulative voting, stressed only its disadvantages, stating that such voting leads to a "factional" Board of Directors, a Board split by "conflict" and "disharmony," and that Management failed to mention the extensive use of cumulative voting in corporate life or its advantages which, in plaintiffs' view, were that "cumulative voting is vital to afford representation on the Board of Directors to minority stockholders whose interests and point of view may differ from those of Management." It is claimed that this latter omission, as well as the failure of Management to state specifically that its purpose in proposing the amendment was to eliminate the plaintiff directors, made Management's proxy statement and the Message false and misleading.

There is a serious doubt of the substance of plaintiffs' position, since the controversy over cumulative voting was thoroughly aired.[2] Management expressed its opinion of the disadvantages of cumulative voting and its impact upon the corporation. Thus, the statement reads:

"In the opinion of the Board of Directors, the elimination of cumulative voting will serve the best interests of the Corporation. Cumulative voting enables a minority stockholder or group of minority stockholders acting in concert to obtain representation on the Board of Directors by cumulating their votes for a particular candidate or candidates. The continuation of cumulative voting would enable the holder or holders of less than 10% of the shares entitled to vote at the forthcoming meeting (or a smaller percentage, depending upon the number of shares represented and voting at the meeting) to elect a director. The Board believes that no director should represent or favor the interests of any particular stockholder or group of stockholders. On the contrary, it is the duty of each director to administer the business and affairs of the Corporation for the benefit of all the stockholders.

"Approximately 69% of the corporations listed on the New York Stock Exchange do not have cumulative voting. In the case of corporations without cumulative voting, the votes of the holders of more than 50% of the shares can elect all of the directors, in which event the votes of the holders of the remaining shares (to the extent cast for other nominees) would not result in the election of any directors. The Board of Directors presently includes one individual, S. Paul Jones, who was elected at the last Annual Meeting of Stockholders through exercise of cumulative voting rights by holders of approximately 8½% of the outstanding shares, and who is not a management nominee for reelection."

The Committee, in turn, in soliciting proxies "In Opposition to Management," expressed its contrary opinion as to the

1. Rule 14a–9(a) of the Commission Rules provides as follows:
"No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

2. Cf. American Crystal Sugar Co. v. Cuban-American Sugar Co., 276 F.Supp. 45, 50 (S.D.N.Y.1967).

merits of cumulative voting. Thus, it stated:

"Cumulative voting is permitted under the laws of 49 of the 50 States and is *mandatory* under the laws of approximately one-third of the States.

### "CUMULATIVE VOTING MUST BE RETAINED

"Management is asking the stockholders to approve a proposal which would deprive the stockholders of their right to elect directors by cumulative voting. *The Committee believes that the preservation of cumulative voting is vital to afford representation on the Board of Directors to minority stockholders whose interests and point of view may differ from those of management. Accordingly, we urge a vote 'AGAINST' the proposal to amend the Certificate of Incorporation so as to delete Article 13 thereof (the cumulative voting provision).*

"The Company and its stockholders have had the benefit of cumulative voting since its inception in 1960. Indeed, it was one of the precepts upon which the Company, an amalgamation of many independent successful companies, was founded. Mr. McConnell and Mr. Jones, both of whom were original stockholders who merged their businesses into Servomation, did so upon the representation that they would be afforded cumulative voting. They believe that others similarly situated relied upon similar representations.

"The elimination of cumulative voting, as suddenly proposed by a majority of the Board of Directors on September 16, 1970, dilutes the rights and privileges which stockholders have enjoyed for so long. Moreover, such elimination, in our opinion, would not serve the best interests of the Com-

pany since it would make it far more difficult for an interested minority to obtain representation on the Board of Directors. * * * "

\* \* \* \* \* \*

"The undersigned strongly believe that the elimination of cumulative voting and the right to minority representation facilitated thereby would be a grievous error. Accordingly, the undersigned recommend that each stockholder vote against the proposal to amend the Certificate of Incorporation to eliminate cumulative voting."

And Management, in its "Message" of November 12, countered that:

"(3) The cumulative voting issue is not one of 'corporate democracy,' as we see it, but rather whether a corporation is better managed by a Board elected by the majority of stockholders than by a Board whose members are elected by different groups of stockholders. We believe that the cumulative voting system may pose dangers of factionalism, foster partisanship and discord and make the Company susceptible to special interest groups."

Thus, even assuming shortcomings in Management's original statement,[3] because it failed to expound the alleged virtues as well as the shortcomings of cumulative voting, plaintiffs themselves, in their solicitation, set forth extensively and in detail the advantages of the method of voting they were urging stockholders to preserve.[4] Surely it must be assumed that they put their best foot forward in the presentation of their case. In short, the stockholders have been exposed to a full presentation of relevant information and contentions by those seeking their franchise—"the views of those who oppose, as well as those who favor" cumulative voting.[5] The decision is up to them.

---

3. Such shortcomings, if any, do not appear to amount to the omission or misstatement of any material fact within the terms of Rule 14a–9(a).

4. The plaintiffs apparently sent additional proxy material to stockholders on November 13, to which reference is made in

Defendants' Exhibit A (page 3). In oral argument plaintiffs also stated they made two mailings.

5. *Cf.* American Crystal Sugar Co v. Cuban-American Sugar Co., 276 F.Supp. 45 (S.D.N.Y.1967).

As to the claim of violation of Rule 14a–9(a) of the Commission Rules, the fact that the proxy material passed muster before the SEC—while not a ruling on the merits of the statements [6]—is of some importance on the issue of injunctive relief.[7] It would be odd indeed, in the light of the controversy between the parties, each of whom submitted their statements to the Commission, that a violation of the Commission Rule went by unnoticed.

Finally, and entirely apart from lack of compelling support for plaintiffs' claim for the extraordinary preliminary injunctive relief they seek, other factors warrant denial of their motion. There has been extreme delay in the presentation of this application for preliminary injunctive relief, made at the "zero hour" preceding the meeting. No adequate excuse appears for this last minute attempt to stay the regularly scheduled meeting, which would serve to disrupt normal conduct of corporate affairs and injure the corporation, and where there has been no adequate showing of irreparable injury to plaintiffs if the meeting proceeds.[8] As already noted, as early as September 16 McConnell and Jones knew that the Board of Directors had voted to submit the proposal for the elimination of cumulative voting to the stockholders. They had demanded and received a stockholders' list by October 9 and were apparently then already embarked on the formation of their Committee. Management notices were mailed to stockholders on October 22, by which time plaintiffs were organizing their Committee. The challenge by plaintiffs to Management's proposal was sent to stockholders on November 7, sixteen days after Management's notice, which contains the material plaintiffs allege violates the proxy Rule. Plaintiffs, however, took no action to stay the meeting at that point, but waited until four days before it was scheduled to seek the extraordinary injunctive relief. Their failure to act alone justifies denial of the motion.[9] In any event, there has been no showing of irreparable harm to plaintiffs if the meeting proceeds as scheduled, since they still can raise their claim of proxy misrepresentation upon a hearing on the merits,[10] whereas halting the meeting will unduly and without cause interfere with the proper conduct of corporate affairs to the corporation's injury.[11] Company-employee relationships

6. Rule 14a–9(b) provides that "[t]he fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made."

7. *See* General Times Corp. v. Talley Industries, Inc., 403 F.2d 159, 163 (2d Cir. 1968), cert. denied, 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969); Armour & Co. v. General Host Corp., 296 F.Supp. 470 (S.D.N.Y.1969); *see also* Sherman v. Posner, 266 F.Supp. 871, 874 (S.D.N.Y.1966); Kauder v. United Board & Carton Corp., 199 F.Supp. 420, 423–424 (S.D.N.Y.1961); Mack v. Mishkin, 172 F.Supp. 885, 888 (S.D.N.Y. 1959); Dunn v. Decca Records, Inc., 120 F.Supp. 1, 2 (S.D.N.Y.1954).

8 *Cf.* Kauder v. United Board & Carton Corp., 199 F.Supp. 420, 423 (S.D.N.Y. 1961).

9. *Cf.* American Crystal Sugar Co. v. Cuban-American Sugar Co., 276 F.Supp. 45, 50 (S.D.N.Y.1967); Shvetz v. Industrial Rayon Corp., 212 F.Supp. 308 (S.D. N.Y.1960); Evans v. American Export Lines, 175 F.Supp. 386 (S.D.N.Y.1959); Eastman Kodak Co. v. McAuley, 41 F. Supp. 873 (S.D.N.Y.1942).

10. Kauder v. United Board & Carton Corp., 199 F.Supp. 420, 423 (S.D.N.Y. 1961); Mack v. Mishkin, 172 F.Supp. 885, 889 (S.D.N.Y.1959); *see* Sherman v. Posner, 266 F.Supp. 871, 873–74 (S.D. N.Y.1966); Elgin Nat'l Ind., Inc. v. Chemetron Corp., 299 F.Supp. 367, 374 (D.Del.1969).

11. *See* General Time Corp. v. Talley Industries, Inc., 283 F.Supp. 832 (S.D. N.Y.), aff'd, 403 F.2d 159 (2d Cir. 1968), cert. denied, 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969); Mack v. Mishkin, 172 F.Supp. 885, 889 (S.D.

have been strained and recruitment of new key personnel has been interfered with due to adverse publicity centering about the proxy fight, and the company's credit rating, it is alleged, is being adversely affected. All these effects would be exacerbated to the point of irreparable injury if the injunction were granted.[12] In sum, the harm likely to be visited upon the corporation if the injunction is issued and is ultimately found unwarranted, far outweighs any possible harm to the plaintiffs if the injunction is erroneously denied at this time.[13]

The motion for a preliminary injunction is denied.

N.Y.1969); Dunn v. Decca Records, Inc., 120 F.Supp. 1, 3 (S.D.N.Y.1954).

12. Cf. Crane Co. v. Briggs Mfg. Co., 280 F.2d 747, 748–749 (6th Cir. 1960).

13. See Clairol, Inc. v. Gillette Co., 270 F.Supp. 371, 381–382 (E.D.N.Y.1967), aff'd, 389 F.2d 264 (2d Cir. 1968).