**CLAIRDALE ENTERPRISES, INC., Plaintiff,**

v.

**C. I. REALTY INVESTORS et al., Defendants.**

No. 75 Civ. 4227.

United States District Court, S. D. New York.

Aug. 9, 1976.

enjoin shareholders' meetings of C. I. Realty Investors ("C.I.R.I."), a real estate investment trust ("REIT"). In an earlier action filed in February, 1975, 75 Civ. 772, plaintiff sought to enjoin a Special Shareholders' Meeting on the ground that the proxy material was false and misleading. That meeting was cancelled and the original claims dismissed as moot. Thereafter, defendant disclosed that two of the nominees for trustee at the 1974 Annual Shareholders' Meeting were ineligible because of their affiliation with the parent of the trust's advisor, C. I. Planning Corporation. In light of this disclosure, plaintiff commenced a second action, 75 Civ. 1252.

After receiving proxy material for the annual shareholders' meeting set for September 4, 1975, plaintiff brought a third action, 75 Civ. 4227, against defendants alleging that the proxy material and accompanying quarterly report were false and misleading in several respects. A motion to enjoin that meeting was denied by Judge Owen who concluded that an insufficient showing had been made to warrant a preliminary injunction. (Opinion of September 3, 1975). Following the September, 1975 meeting, plaintiff continued with its third action. In an opinion and order of June 21, 1976, D.C., 423 F.Supp. 257, I ruled that the claim of fraud in plaintiff's complaint was sufficiently particular to survive a motion to dismiss for vagueness but granted the motion to dismiss as to the derivative claim on the ground that a shareholder demand had not been made as required by Rule 23.1, Fed.R.Civ.P.

On June 25, 1976 C.I.R.I. sent out a Notice of Annual Meeting together with a Proxy Statement and an Annual Report. The notice indicated that at a meeting scheduled for July 30, 1976 shareholders would be asked to (a) elect nine trustees; (b) vote upon an amendment to the declaration of trust which would eliminate the requirement that C.I.R.I. operate as a REIT; and (c) to reappoint Peat, Marwick, Mitchell & Co. ("Peat, Marwick") as auditors. The date of the shareholders meeting has since been changed to August 10, 1976.

Shea, Gould, Climenko & Casey, New York City, by Sheldon D. Camhy, Richard F. Czaja, New York City, for plaintiff.

Davis, Polk & Wardwell, New York City, by Richard E. Nolan, Mark L. Austrian, New York City, for defendants.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge:

This motion represents the third effort by the plaintiff, Clairdale Enterprises, Inc., to

Plaintiff now moves by order to show cause to amend its complaint to include allegations that the recently distributed proxy material violates section 14(a) of the Securities Exchange Act, of 1934, 15 U.S.C. § 78n(a) and Rule 14a–9 promulgated thereunder and for an order enjoining defendants from voting any proxies received pursuant to the June 25, 1976 proxy statement. Plaintiff has also sought an order directing accelerated discovery.[1]

The complaint alleges misstatements and omissions of both a financial and non-financial nature. The financial inadequacies and defects may be summarized as follows: the reserves for losses make inadequate provisions for losses incurred with respect to present and former mortgage operations; assets are listed in the balance sheet and elsewhere in excess of their real value; there is inadequate disclosure of which properties have had a negative cash flow; the mortgages on two properties are carried at full investment value even though they are undersecured due to operating losses; expenses and losses are included as additions to capital investment as to properties of marginal value; and the shareholders' equity per share is unrealistic and inflated. Briefly, the non-financial allegations include: failure to state the period of duration of the advisory agreement with C. I. Planning Corporation; failure to disclose that C. I. Mortgage Group (a joint participant with C.I.R.I. in certain defaulted mortgage loans) has access to financing at a low rate of interest and, therefore, is under little pressure to liquidate defaulted properties; misstatements as to the advantages of abandoning REIT status; and, false statements in the Annual Report concerning management plans to reduce interest costs through refinancing of certain properties.

In this Circuit, a preliminary injunction will issue

"only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting preliminary relief."

*Sonesta Int'l Hotels v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original). In its memorandum of law, plaintiff has not argued the probable success/possible irreparable injury standard; rather it relies upon the alternative standard for the issuance of a preliminary injunction.

The serious questions/balance of the hardship test has recently been reexamined by the Court of Appeals for this Circuit. In *Triebwasser & Katz v. American Telephone & Telegraph*, 535 F.2d 1356 (1976) the district court had granted a preliminary injunction relying upon this standard. While the Court of Appeals agreed with the district court that there were serious questions going to the merits, it disagreed with the trial court's interpretation of the balance of the hardships test:

"Our difficulty . . . is with the finding that the balance of hardships tips decidedly in the plaintiff's favor. At the outset, we should note that this language of the basic obligation of the plaintiff to make a clear showing of the threat of irreparable harm. That is a fundamental and traditional requirement of all preliminary injunctive relief, see *Doran v. Salem Inn, Inc., supra*, 422 U.S. [922] at 931, [95 S.Ct. 2561, 45 L.Ed.2d 648] since equity cannot intervene where there is an adequate remedy at law. . . . If the element of irreparable damage is prerequisite for relief where the plaintiff must show probable success on the merits, then a *fortiori* where the plaintiff establishes something less than probable success as to the merits, need for proof of the threat of irreparable damage is even more pronounced. In sum, the balancing of hardships test of *Sonesta* necessarily

---

1. Plaintiff has requested that accelerated depositions and discovery be taken and that defendants be directed to answer interrogatories.

includes the showing of irreparable harm."

535 F.2d at 1359.[2] As Judge Mulligan's opinion points out, there is no logical basis for requiring less of a showing of potential injury on the part of a movant who can only demonstrate serious questions going to the merits than from one who can show a probability of success at trial.

■ In order to properly evaluate the possible injury to plaintiff, the effects of the proposed shareholder action must be examined. The shareholders have been asked to vote on a proposed amendment to the declaration of trust which would permit the trustees to permanently alter the trust to a non-REIT. While an alteration of tax status, going to the heart of a business venture, might ordinarily serve as the basis for equitable relief, here the power to alter the REIT status of the trust is already vested in the trustees. The declaration of trust provides that:

> "*Except to the extent the Trustees determine to allow such qualification to lapse for one or more fiscal periods*, the Trust is intended to operate so as to qualify as a "real estate investment trust" as defined in the REIT Provisions and this Declaration. . . ." (Emphasis added).

Thus an injunction against consideration of the proposed amendment would not eliminate the trustees' ability to temporarily disqualify the trust as a REIT. Furthermore, the trustees are not required to abandon REIT status if the amendment is adopted and, as indicated in the proxy statement, "[t]he Trustees have not yet reached a decision as to whether or not they will cause the Trust to assume nonqualified status under the REIT Provisions if the amendment is adopted."

■ As to reelection of trustees and reappointment of auditors, I do not believe plaintiff has made a sufficient showing of harm. There must be a specific showing of potential immediate injury resulting from the reelection and reappointment which could not be adequately compensated by money damages or rectified by injunctive relief at some later stage of the litigation.

Last year the same plaintiff argued that irreparable injury would result if the annual C.I.R.I. shareholders' meeting were not enjoined. As previously mentioned, Judge Owen refused to enjoin that meeting and there has been no showing of any particular harm which has resulted to C.I.R.I. shareholders from the action taken at the 1975 annual meeting. As Judge Owen wrote last year:

> ". . . if plaintiff hereafter demonstrates that the proxies were unlawfully obtained and utilized, the results of the annual meeting may then be set aside, the proxies resolicited and a new vote held."

(Opinion of September 3, 1975 at 4). *D–Z Investment Company v. Holloway* [1974–75 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,588 (S.D.N.Y.1974); *McConnell v. Lucht*, 320 F.Supp. 1162, 1166 (S.D.N.Y.1970). Thus, the present situation is unlike that presented in *Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co., Inc.*, 356 F.Supp. 1066, (S.D.N.Y.1973), aff'd, 476 F.2d 687 (2d Cir.) where this court found that it would be "impossible to unravel the situation" if an injunction *pendente lite* were not issued. *Anaconda v. Crane*, 411 F.Supp. 1210, 1220 (S.D.N.Y.1975).

The grant of a preliminary injunction may well cause serious hardship to C.I.R.I. As Judge Weinfeld has pointed out, injunctions against shareholders' meetings can cause undue interference with the conduct of corporate affairs, and adversely affect the company's credit rating. *McConnell v. Lucht*, 320 F.Supp. 1162, 1166–67 (S.D.N.Y. 1970). *Sherman v. Posner*, D.C., 266 F.Supp. 871 (1966). It may also affect the market value of the shares to the detriment of innocent shareholders. Thus, irrespective of possible irreparable injury, I do not

---

**2.** *See Munters Corporation v. Burgess Industries Incorporated*, 535 F.2d 210 n. 2 (2d Cir. 1976). *See also Diversified Mortgage Investors v. U. S. Life Title Insur. Co.*, 544 F.2d 571 (1976).

find that the balance of the hardship tips decidedly in Clairdale's favor.

The motion for a preliminary injunction is denied. The motion for leave to file an amended complaint is granted. Plaintiff's discovery requests are respectfully referred to Magistrate Bernikow for his consideration.

SO ORDERED.