**Fay ORDWAY, by her parent,
Iona Ordway**

v.

**Robert HARGRAVES, Principal of North Middlesex Regional High School, et al.**

**Civ. A. No. 71–540–C.**

United States District Court,
D. Massachusetts.

March 11, 1971.

Stuart R. Abelson, Carolyn R. Peck, Center for Law and Education, Cambridge, Mass., for plaintiff.

James E. Shaw, Dunstable, Mass., for defendants.

MEMORANDUM and ORDER

CAFFREY, District Judge.

This is a civil action brought on behalf of an 18-year old pregnant, unmarried, senior at the North Middlesex Regional High School, Townsend, Massachusetts. The respondents are the Principal of the High School, Robert Hargraves, the seven individual members of the North Middlesex Regional High School Committee, and the School Committees of Pepperell and Townsend. The cause of action is alleged to arise under the Civil

Rights Act, 42 U.S.C.A. § 1983, and jurisdiction of this court is invoked under 28 U.S.C.A. § 1343. The matter came before the court for hearing on plaintiff's application for preliminary injunctive relief in the nature of an order requiring respondents to re-admit her to the Regional High School on a full-time, regular-class-hour, basis.

At the hearing, eight witnesses testified. On the basis of the credible evidence adduced at the hearing, I find that the minor plaintiff, Fay Ordway, resides at East Pepperell, Massachusetts, and is presently enrolled as a senior in the North Middlesex Regional High School; and that plaintiff informed Mr. Hargraves, approximately January 28, 1971, that she was pregnant and expected to give birth to a baby in June 1971. There is outstanding a rule of the Regional school committee, numbered Rule 821, which provides: "Whenever an unmarried girl enrolled in North Middlesex Regional High School shall be known to be pregnant, her membership in the school shall be immediately terminated." Because of the imminence of certain examinations and the fact that school vacation was beginning on February 12, Mr. Hargraves informed plaintiff that she was to stop attending regular classes at the high school as of the close of school on February 12. This instruction was confirmed in writing by a letter from Mr. Hargraves to plaintiff's mother, Mrs. Iona Ordway, dated February 22, 1971, in which Mr. Hargraves stated that the following conditions would govern Fay Ordway's relations with the school for the remainder of the school year:

a) Fay will absent herself from school during regular school hours.

b) Fay will be allowed to make use of all school facilities such as library, guidance, administrative, teaching, etc., on any school day after the normal dismissal time of 2:16 P.M.

c) Fay will be allowed to attend all school functions such as games, dances, plays, etc.

d) Participation in senior activities such as class trip, reception, etc.

e) Seek extra help from her teachers during after school help sessions when needed.

f) Tutoring at no cost if necessary; such tutors to be approved by the administration.

g) Her name will remain on the school register for the remainder of the 1970–71 school year (to terminate on graduation day-tentatively scheduled for June 11, 1971).

h) Examinations will be taken periodically based upon mutual agreement between Fay and the respective teacher.

Thereafter, plaintiff retained counsel, a hearing was requested, and was held by the school committee on March 3, 1971. The school committee approved the instructions and proposed schedule set out in Mr. Hargraves' letter of February 22, and a complaint was filed in this court on March 8.

█ It is well-established that in order to obtain a preliminary injunction, the plaintiff must satisfy two requirements, (1) that denial of the injunction will cause certain and irreparable injury to the plaintiff, Celebrity, Inc. v. Trina, Inc., 264 F.2d 956 (1 Cir. 1959), and (2) "that there is a reasonable probability that (she) will ultimately prevail in the litigation." Cuneo Press of N.E., Inc. v. Watson, 293 F.Supp. 112 (D.Mass.1968).

At the hearing, Dr. F. Woodward Lewis testified that he is plaintiff's attending physician and that she is in excellent health to attend school. He expressed the opinion that the dangers in attending school are no worse for her than for a non-pregnant girl student, and that she can participate in all ordinary school activities with the exception of violent calisthenics. An affidavit of Dr. Charles R. Goyette, plaintiff's attending obstetrician, was admitted in evidence, in which Dr. Goyette corroborated the opinions of Dr. Lewis and added his opinion that "there is no rea-

son that Miss Ordway could not continue to attend school until immediately before delivery."

Dr. Dorothy Jane Worth, a medical doctor, employed as Director of Family Health Services, Massachusetts Department of Public Health, testified that in her opinion exclusion of plaintiff will cause plaintiff mental anguish which will affect the course of her pregnancy. She further testified that policies relating to allowing or forbidding pregnant girls to attend high school are now widely varying within the state and throughout the United States. She testified that both Boston and New York now allow attendance of unmarried pregnant students in their high schools. She further testified that she was not aware of any reason why any health problems which arose during the day at school could not be handled by the registered nurse on duty at the high school.

Dr. Mary Jane England, a medical-doctor and psychiatrist attached to the staff of St. Elizabeth's Hospital, expressed the opinion that young girls in plaintiff's position who are required to absent themselves from school become depressed, and that the depression of the mother has an adverse effect on the child, who frequently is born depressed and lethargic. She further testified that from a psychiatric point of view it is desirable to keep a person in the position of plaintiff in as much contact with her friends and peer group as possible, and that they should not be treated as having a malady or disease.

Mrs. Janice Montague, holder of a Master's degree in social work from Simmons Graduate School, testified that on the basis of her eleven years experience working with Crittenton House, she has learned that the consensus among social workers who specialize in working with pregnant unwed girls is to give to the individual the choice of whether to remain in class or to have private instruction after regular class hours.

Plaintiff testified that her most recent grades were an A, a B–plus, and two C–pluses, and that she strongly desires to attend school with her class during regular school hours. She testified that she has not been subjected to any embarrassment by her classmates, nor has she been involved in any disruptive incidents of any kind. She further testified that she has not been aware of any resentment or any other change of attitude on the part of the other students in the school. This opinion of plaintiff as to her continuing to enjoy a good relationship with her fellow students was corroborated by the school librarian, Laura J. Connolly.

The remaining witness for plaintiff was Dr. Norman A. Sprinthall, Chairman of the Guidance Program, Harvard Graduate School of Education, who testified that in his opinion the type of program spelled out in Mr. Hargraves' letter of February 22, for after-hours instruction, was not educationally the equal of regular class attendance and participation.

It is clear, from the hearing, that no attempt is being made to stigmatize or punish plaintiff by the school principal or, for that matter, by the school committees. It is equally clear that were plaintiff married, she would be allowed to remain in class during regular school hours despite her pregnancy. Mr. Hargraves made it clear that the decision to exclude plaintiff was not his personal decision, but was a decision he felt required to make in view of the policy of the school committee which he is required to enforce as part of his duties as principal. In response to questioning, Mr. Hargraves could not state any educational purpose to be served by excluding plaintiff from regular class hours, and he conceded that plaintiff's pregnant condition has not occasioned any disruptive incident nor has it otherwise interfered with school activities. Cf. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 514, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969), where the

Supreme Court limited school officials' curtailment of claimed rights of students to situations involving "substantial disruption of or material interference with school activities."

Mr. Hargraves did imply, however, his opinion is that the policy of the school committee might well be keyed to a desire on the part of the school committee not to appear to condone conduct on the part of unmarried students of a nature to cause pregnancy. The thrust of his testimony seems to be: the regional school has both junior and senior high school students in its student population; he finds the twelve-to-fourteen age group to be still flexible in their attitudes; they might be led to believe that the school authorities are condoning premarital relations if they were to allow girl students in plaintiff's situation to remain in school.

It should be noted that if concerns of this nature were a valid ground for the school committee regulation, the contents of paragraph b), c) and d) of Mr. Hargraves' letter of February 22 to plaintiff's mother substantially undercut those considerations.

█ In summary, no danger to petitioner's physical or mental health resultant from her attending classes during regular school hours has been shown; no likelihood that her presence will cause any disruption of or interference with school activities or pose a threat of harm to others has been shown; and no valid educational or other reason to justify her segregation and to require her to receive a type of educational treatment which is not the equal of that given to all others in her class has been shown.

█ It would seem beyond argument that the right to receive a public school education is a basic personal right or liberty. Consequently, the burden of justifying any school rule or regulation limiting or terminating that right is on the school authorities. Cf. Richards v. Thurston, 424 F.2d 1281, at

1286 (1 Cir. 1970), where the court ruled:

"In the absence of an inherent, self-evident justification on the face of the rule, we conclude that the burden was on the defendant."

On the record before me, respondents have failed to carry this burden. Accordingly, it is

Ordered:

1. Respondents are to re-admit plaintiff to regular attendance at North Middlesex Regional High School until further order of this court.

2. This order will be effective as of the opening of school, at 8:00 A.M., Monday, March 15, 1971.