**NATICK PAPERBOARD CORP.**

and

**Crown Paperboard Co., Inc.**

v.

**Caspar WEINBERGER, Secretary of the Department of Health, Education and Welfare,**

and

**Alexander Schmidt, Commissioner of the Federal Food and Drug Administration.**

**Civ. A. No. 73-2988-C.**

United States District Court,
D. Massachusetts.

Dec. 11, 1973.

Endicott Peabody, Boston, Mass., Robert F. deGiacomo, Washington, D. C., for plaintiffs.

James N. Gabriel, U. S. Atty., William Brown, Asst. U. S. Atty., Boston, Mass., Charles J. Raubicheck, Food and Drug Administration, U. S. Dept. of Health, Education and Welfare, Rockville, Md., for defendants.

OPINION

CAFFREY, Chief Judge.

This is a civil action for injunctive relief brought by Natick Paperboard Corp. (hereinafter Natick), a corporation organized under the laws of Massachusetts, and by Crown Paperboard Co., Inc. (hereinafter Crown), a corporation organized under the laws of Pennsylvania, Respondents are Caspar Weinberger. Secretary of the Department of Health, Education and Welfare, and Alexander Schmidt, Commissioner of the Federal Food and Drug Administration (FDA).

The matter came before the Court most recently on plaintiffs' application for a preliminary injunction and on defendants' motion to dismiss the prayer for declaratory judgment and in the alternative for summary judgment.

Both plaintiffs are engaged in the business, *inter alia*, of manufacturing paper products from recycled waste paper. Included among the products manufactured by plaintiffs is a paper food-packaging material sold by plaintiffs in interstate commerce for use in the packaging of foods. It appears that the packaging materials contain a certain amount of polychlorinated biphenyls (hereinafter PCB's). It is the position of defendants that PCB's are toxic substances which above a certain level should not be found in foods for human consumption. The Commissioner of Food and Drugs has issued a regulation pursuant to authority vested in him by 21 U.S.C.A. §§ 342(a), 346, 348, and 371 and 21 C.F.R. § 2.120, and has issued a notice of proposed rules limiting the amount of PCB's that may be found in paper food-packaging material to 10 parts per million (hereinafter 10 PPM). It is defendants' theory that PCB's are toxic substances which may be and are found in food products so wrapped because of migration of the PCB's from what the defendants contend is contaminated paper packaging material into foods so packaged.

After the promulgation of its regulation limiting the PCB level to 10 PPM,

38 Fed.Reg. 18102, objections to the regulation were filed by representatives of the paperboard industry whereupon the FDA pursuant to 21 U.S.C.A. § 371(e) stayed the effective date of the regulation pending a public hearing on the industry objections.

At about the same time, however, the FDA notified the industry that it would seize all paper food-packaging materials shipped in interstate commerce if those materials had a quantity of PCB's contained therein in excess of the permitted tolerance of 10 PPM. The instant complaint was filed in this Court on September 4, 1973 in quest of both injunctive relief against the FDA's threatened seizures and also in quest of declaratory relief to the effect that the FDA lacked legal authority to direct the seizure of paper food-packaging materials because plaintiffs contend that the food-packaging materials did not constitute "food" within the meaning of 21 U.S.C.A. § 334 which contains the statutory basis for seizure of contaminated "foods."

Plaintiffs' application for a temporary restraining order was heard by another judge of this Court and denied by him after a hearing on the grounds that plaintiffs had failed to prove either irreparable harm or a probability of success on the merits. Thereafter, defendants filed a motion to dismiss the complaint for injunctive relief for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the F.R.Civ.P. which this Court denied on November 26 after a hearing. Meanwhile, on November 19 defendants filed a motion to dismiss the complaint for declaratory relief premised on the grounds that the complaint failed to state a claim upon which relief can be granted and in the alternative for summary judgment.

■ It is now well settled law in this Circuit that in order to obtain a preliminary injunction the plaintiff moving therefor must show a substantial likelihood of success on the merits and a probability of immediate and irreparable harm if the injunction is not granted. In passing on these two issues a court is to consider also whether the failure to issue an injunction will cause more harm to plaintiff than the granting of an injunction would cause to defendants. Automatic Radio Manufacturing Co. v. Ford Motor Co., 390 F.2d 113, 115–116 (1st Cir. 1968); Celebrity, Inc. v. Trina, Inc., 264 F.2d 956, 958 (1st Cir. 1959); Cuneo Press of New England v. Watson, 293 F.Supp. 112, 115–116 (D.Mass. 1968).

■ Plaintiffs' application for a preliminary injunction founders on the second of these two grounds because it is clear that these two manufacturing corporations allege as the irreparable harm said to be consequent to the denial of an injunction the fact that the sale of paper food-packaging material amount to 7½% of Natick's gross sales and 12% of Crown's gross sales. It is further alleged that seizure of packaging materials exceeding the 10 PPM tolerance will at least temporarily eliminate these portions of plaintiffs' gross sales. Plaintiffs further allege that failure to supply their customers because of the threatened seizure will to an unspecified extent damage the good will of their businesses and that adverse publicity from the seizure will scare away customers who otherwise would purchase food-packaging materials from plaintiffs. Assuming all of the foregoing to be true, I find and rule that economic injury to this limited extent does not constitute irreparable harm since it is well settled law that something other than monetary damages recoverable in a court of law must be shown in order to establish irreparable harm. Accordingly, without re-examining the issue of probability of success which has already been ruled on adversely to plaintiffs by another member of this Court, I rule that plaintiffs have failed to demonstrate that the denial of injunctive relief herein will visit irreparable harm upon them. Accordingly, assuming this Court to have jurisdiction only for purposes of the ruling on this part of the case, the

application for preliminary injunction is denied.

■ A more fundamental issue exists as to whether or not this Court has subject matter jurisdiction to entertain a suit seeking an injunction against the threatened seizures.

The basis for the proposed seizure of these materials lies in 21 U.S.C.A. § 334(a)(1) which in pertinent part provides:

"Any article of food, drug, device or cosmetic that is adulterated . . . shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States . . . within the jurisdiction of which the article is found . . ."

Defendants argue herein that the intent of Congress in enacting the quoted language from Section 334 was to make the libel for condemnation the only legal proceeding in which the validity of a seizure could be tested in a United States District Court. Defendants argue that a United States District Court does not have jurisdiction to review actions of the Food and Drug Administrator other than in the course of determining a libel of forfeiture. This say defendants is the thrust of the opinion of the Supreme Court in Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 600–601, 70 S.Ct. 870, 94 L.Ed. 1088 (1950). Plaintiffs respond with the contention that the later decision of the Supreme Court in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) undercuts the vitality of Ewing and operates to make the regulations in issue here reviewable in the instant litigation.

An examination of the statutory basis of the Commissioner's action in the two cases persuades this Court that plaintiffs have misread Abbott. In Ewing as the Supreme Court points out in its opinion on Abbott (at page 146, 87 S.Ct. at page 1514):

"The Food and Drug Administrator found that there was probable cause that a drug was 'adulterated' because it was misbranded in such a way as to be 'fraudulent' or 'misleading to the injury or damage of the purchaser or consumer . . . 21 U.S.C.A. § 334(a)."

In Abbott the Supreme Court explained what it had done in the Ewing rule as follows (at page 147, 87 S.Ct. at page 1514):

"Multiple seizures were ordered through libel actions. The manufacturer of the drug brought an action to challenge directly the Administrator's finding of probable cause. This Court held that the owner could raise his constitutional, statutory, and factual claims in the libel actions themselves, and that the mere finding of probable cause by the Administrator could not be challenged in a separate action. That decision was quite clearly correct, but nothing in its reasoning or holding has any bearing on this temporary judgment action challenging a promulgated regulation."

In Abbott the Commissioner acted on the basis of 21 U.S.C.A. § 352(e)(1) (B):

"352. A drug or device shall be deemed to be misbranded— . . . (e)(1) If it is a drug, unless . . . (B) for any prescription drug the established name of such drug or ingredient, as the case may be, on such label . . . is printed prominently and in type at least half as large as that used therein for any proprietary name or designation for such drug or ingredient: . . ."

In Abbott the Commissioner published proposed regulations designed to implement the above-quoted statutory provision. In Abbott the Commissioner did not purport to make the finding of probable cause required by 21 U.S.C.A. § 334(a) whereas in the instant case the Commissioner has undertaken to make a finding of probable cause as to materials containing PCB's in excess of 10 PPM.

The Court went on in *Abbott* to explain that the finding of probable cause by the Commissioner in *Ewing* was merely the performance of a statutory prerequisite to the later bringing of a libel for forfeiture at which the legal issues could be aired, whereas *Abbott* involved the promulgation of a self-operative industry wide regulation. The Court in *Abbott* declined to equate a finding of probable cause for proceeding against a particular drug manufacturer with the promulgation of a self-operative industry wide regulation. I rule that the instant case involves the finding of probable cause required by Section 334(a) by the Commissioner as a statutory prerequisite to the bringing of libels of forfeiture at which the legal issues may be aired. Accordingly, I rule that this Court lacks jurisdiction to entertain the instant complaint for injunctive relief which must be dismissed for lack of subject matter jurisdiction.

 With reference to that portion of the complaint which seeks declaratory relief on the issue of whether or not the paper packaging material may be found to be "food" within 21 U.S.C.A. § 321(f) on the basis of the Government's theory that packaging paper containing PCB's is a "food additive" because the PCB's migrate from the paper into the food, within 21 U.S.C.A. § 321(s), I rule that this Court also lacks subject matter jurisdiction because of the provisions of Title 21 U.S.C.A. § 348(g)(1) which provides in pertinent part that jurisdiction of a law suit to determine the correctness of a decision by the agency as to what constitutes food lies in the Court of Appeals "for the circuit wherein such person (any person who will be adversely affected by such order) resides or has his principal place of business."

Subsection (g)(2) of Section 348 further provides in pertinent part:

" . . . Upon the filing of such petition the court (of Appeals) shall have jurisdiction, which upon the filing of the record with it, shall be exclusive . . . "

Thus, this Court rules that it also lacks subject matter jurisdiction to entertain petitioner's complaint for declaratory relief. Accordingly, the complaint must be dismissed because this court lacks jurisdiction to entertain either the application for injunctive relief or the application for declaratory relief. Order accordingly.